## CHARLESTON.

ANNA MACHALA *v.* LEE OTT, *State Compensation Commissioner*

(No. 6657)

Submitted January 8, 1930. Decided January 14, 1930.

*John P. Arbenz,* for appellant.

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Chas. D. Smith,* for respondents.

MAXWELL, JUDGE:

Anna Machala appeals from an order of the State Compensation Commissioner refusing her an award on account

of the death of her husband, John Machala, September 21, 1927.

It is claimed that John Machala's death resulted from a blow in the stomach from the end of a long iron stoking bar with which, in the regular course of his employment, he was raking or cleaning the fire under a boiler of the Wheeling Steel Corporation, in the night of September 16, 1927. Nobody saw the alleged accident, and nobody knows anything about it except from decedent's own statements.

Shortly after the time that he said he was injured the shift on which he was working (3:30 P. M. to 11:00 P. M.) was completed and he walked with fellow workmen about a mile and a half to his home. He said nothing to them about having been hurt, nor had he said anything about it to anybody at the mill. His widow testifies that upon his reaching home about 11:30 he drank some water and a glass of milk; that about two hours later he awoke from his sleep very sick, and vomited. Dr. H. F. Zink was called to see him the next morning. Another physician, Dr. C. W. Kirkland, also attended the patient. The widow and each of the physicians testifies that the deceased said that the iron bar with which he was working at the plant slipped and struck him on the right side of the abdomen. Dr. Zink testified that there was tenderness and discoloration on the abdomen at the point where the patient said he had been struck.

A post mortem examination conducted by the two physicians named and Dr. J. W. Neidermyer—the latter a physician in the employ of the Wheeling Steel Corporation—disclosed an unnatural condition in the region of the right lobe of the liver. Dr. Zink reported that the examination showed contusion of the liver and pleurisy; that the condition of the liver showed that there had been an injury, and that this condition was sufficient to have caused death. Dr. Kirkland reported a marked traumatic condition of right lobe of liver which could have resulted from just such a blow as decedent had described to him and that said condition was sufficient to have caused death. Dr. Neidermyer reported a small brown stain over sixth or seventh rib as the only evidence of external injury; a boggy right lobe of liver due

probably to hemorrhage; pleural exudate over right lung but no other pathology found; gall bladder punctured by undertaker in embalming. It was his opinion that if death was due to external violence, there would have been more signs of external injury.

It will be seen that there is a sharp conflict between the reports of the first two named physicians and that of the company doctor, particularly as to the probable cause of the liver condition. Dr. Neidermyer advances no cause; but his statement that no other pathology was found seems to indicate that in his opinion decedent's death was due alone to the liver condition.

Application for compensation was filed by defendent's widow. The Compensation Commissioner by order of March 7, 1928, rejected the claim and assigned as a reason "not shown that death of employee is the result of an injury received in the course of and resulting from employment." On December 26, 1928, the Commissioner refused to set aside the order of March 7th. On January 22, 1929, petitioner presented her petition and appeal to the Compensation Appeal Board. Pending decision of the case the Appeal Board was abolished by act of the legislature of 1929. Thereafter the appeal was presented to this Court. Such was a proper procedure. *Conley* v. *Compensation Commissioner*, 107 W. Va. 546.

May the testimony of witnesses as to statements made to them by a person since deceased as to the cause of his injury be received in evidence? Under the ordinary rules of evidence this testimony would be excluded as hearsay unless part of the *res gestae*. Can it be admitted under the letter or spirit of our Workmen's Compensation Statute? Section 44 of that statute reads: "The commissioner shall not be bound by the usual common law or statutory rules of evidence, but shall adopt formal rules of practice and procedure as herein provided, and may make investigations in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out the provisions of this act."

In reference to this provision of the statute we said in

394

*Poccardi* v. *Commissioner*, 82 W. Va. 497: "The statute itself relaxes the common law and statutory rules of evidence and abolishes the technical and formal rules of procedure other than those expressly retained, and requires each claim to be investigated in such manner as may best be calculated to ascertain the substantial rights of the parties and justify and liberally effectuate the spirit and purpose of its provisions. Its object is beneficient and bountiful, its provisions broad and generous. The intention and design of its enactment is to establish a mode for the prompt redress of grievances and secure restitution commensurate with the loss of the services of those upon whom depend for support and maintenance the persons named in the statute as its beneficiaries. Strict rules are not to obtain to the detriment of a claimant in violation of these wholesome purposes."

The general rule seems to be that a compensation award may not be made on the uncorroborated statement of a deceased workman as to the cause of his injury. In the case of *Zion's Co-Op. Institution* v. *Industrial Commission,* (Utah) 262 Pac. 99, the court said: "It has been repeatedly decided by this court that a material finding entirely based on hearsay or other incompetent evidence cannot be permitted to stand as the basis of an award." In that case the evidence consisted solely of the testimony of the wife of deceased employee as to statements made by him to her about three hours after the accident alleged as the cause of his death. The award was annulled by the court. A New York court thus states the rule: "Claimant, under Workmen's Compensation Law, in proving that accident arose out of and in the course of the employment, must produce some legal evidence, and cannot rely exclusively on hearsay testimony." *White* v. *American &c. Society,* 180 N. Y. Sup. 867. To the same effect are *Schnable* v. *Butterick Pub. Co.,* 212 N. Y. Supp., 111, and *Belcher* v. *Carthage Machine Co.,* (N. Y.) 120 N. E. 735. It appears from the opinion in the case of *Carroll* v. *Knickerbocker Ice Co.,* (N. Y.) 113 N. E. 507, that the provisions of the Workmen's Compensation Act of that state are very similar to our own as above quoted. See also *Butler's Case,* (Mass.) 137 N. E. 175. "The statements made by a

deceased employee, in the absence of his employer, as to his bodily or mental feeling, are admissible in evidence, but those made as to the cause of his illness are not admissible in evidence, and where there is no other evidence of an accident arising out of and in the course of his employment than statements made by a deceased employee in the absence of his employer, an award cannot be sustained.'' Bradbury's Workmen's Compensation Law, p. 1011. In fact, there is much respectable authority that such testimony should be excluded entirely, regardless of corroboration. ''Statements made by the injured workman relative to his bodily or mental feelings may be admitted, but his statements relative to the cause of his injury should be excluded. This is true as to statements made by a deceased employee to a fellow servant as to the cause of his injury.'' Honnold on Workmen's Compensation, Vol. 1, sec. 218. In the case of *Peoria Cordage Co. v Industrial Board,* (Ill.) 119 N. E. 996, we find this language: ''Declarations made by one injured to his attending physician are admissible in evidence when they relate to the part of the body injured and his symptoms and sufferings, because a physician is necessarily guided to some extent by such information, free from suspicion of being spoken with reference to future litigation, but the statements are not competent if they relate to the cause of the injury. * * * The testimony of the witnesses concerning what Favre said to them as to the cause of the injury and where and how it occurred was incompetent and should not have been admitted and was insufficient to sustain the award.'' Another typical case along this line is that of *Rick* v. *Whittlesberger,* (Mich.) 148 N. E. 247, wherein there appears this language: ''The rule against hearsay evidence is more than a mere artificial technicality of law. It is founded on the experience, common knowledge, and common conduct of mankind. Its principles are generally understood and acted upon in any important business transaction or serious affair in life. In such matters men refuse to rely on rumor or what some one has heard others say, and demand the information at first hand.'' From all the foregoing authorities it would seem to be very generally recognized that such heresay statements

either ought not to be considered at all, or, if considered, should be considered only in connection with competent and sufficient corroborating testimony.

In the instant case a decision will not have to be predicated alone upon the hearsay testimony as to statements of the deceased in regard to the cause and manner of his injury. There are some vital surrounding circumstances which must all be looked to and considered. Now, although certain of the circumstances appear in the record, the Court is of opinion that the case has not been developed with sufficient fullness in those particulars. It appears that the employee was engaged in work necessarily involving some physical hazard; that he was a healthy, vigorous man; that when he left his home to go to work on the 16th of September, 1927, he had received no injury to his right side; that he worked on the shift from 3:30 P. M. to 11:00 P. M. of that day and then walked to his home with two fellow workmen who resided in his neighborhood; and that when he reached home he had the marks of the injury upon him. The record does not disclose any effort to account for this man's trip from his home to the mill, with the idea of negativing injury while en route; nor were the men who walked home with him that night inquired of as to whether anything then happened to him. The most that either of them said is that they went "straight home". And again, medical opinion evidence directed to the time of the receiving of the blow as was claimed by the deceased ought to be of substantial assistance in reaching a proper decision herein. For example, if the deceased received a blow of sufficient severity to cause the condition of the liver as disclosed by the post mortem, what was the probable immediate effect of the blow upon him, as to nausea, pain, discomfort, ability to proceed with his work for a half hour or more thereafter, and then to walk about one and one-half mile to his home? What is the opinion of competent and experienced physicians as to these matters, and what are their reasons for their opinions? Also, is any history of prior injury or disease as to the deceased obtainable?

While it is the purpose of the Workmen's Compensation law that it shall be liberally interpreted and benignly applied

for the benefit of injured workmen and their dependents, it does not follow that awards should be made out of the fund unless there be a satisfactory and convincing showing that the injury complained of was actually received by the employee in the course of his employment. Before a case is finally passed upon, if the proof is not satisfactory and it seems that other proof is probably available, opportunity should be afforded for it to be developed. *Foughty* v. *Commissioner,* 80 W. Va. 88.

For the purpose of further development of this case in the particulars aforesaid, and in such other particulars as to the claimant or the commissioner may seem proper, we reverse the orders of March 7th and December 26, 1928, and remand the case to the commissioner with directions to him to cause such further development to be made; and if thereupon it satisfactorily appears that the death of plaintiff's decedent was caused by an injury received by him in the course of his employment at the plant of the Wheeling Steel Corporation, to ascertain the compensation properly to be allowed under the statute and pay the same.

*Reversed and remanded with directions.*