# CHARLESTON.

ANNA MACHALA *v.* STATE COMPENSATION COMMISSIONER

(No. 6843)

Submitted September 23, 1930. Decided September 30, 1930.

*John P. Arbenz,* for appellant.

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Charles D. Smith,* Secretary State Compensation Commissioner, for respondents.

WOODS, JUDGE:

Anna Machala, widow, filed a claim with the Compensation Commissioner on the theory that her husband's death resulted

from a blow on the right side of the abdomen from the end of a long iron stoking bar with which, in the regular course of his employment, he was raking or cleaning the fire under a boiler of the Wheeling Steel Corporation. She appeals from an order refusing her an award.

On a former hearing, this Court, being of the opinion that the evidence in regard to the cause and manner of the injury had not been sufficiently developed, remanded the case for further investigation in regard to certain "vital surrounding circumstances", such as, possibility of injury en route to and from work, and, if decedent had received the alleged blow at 10:30 P. M., could he have continued until quitting time (half hour later), and then have walked home (1½ miles) without nausea or undue pain? *Machala* v. *Compensation Com'r.*, 108 W. Va. 391.

It appears that about 1:30 A. M., following the alleged accident, Machala awoke from sleep very sick, and vomited. At nine o'clock the family physician, Dr. Zink, found him in bed suffering from his right side. An examination revealed a swollen condition, a noticeable tenderness and slight discoloration on the body over the right lobe of the liver, the point of the alleged blow. Five days later death came. A post mortem, held seven hours thereafter by Dr. Neidermyer, at the instance of the Wheeling Steel Corporation, disclosed an unnatural condition in the region of the right lobe of the liver. Drs. Zink and Kirkland were present, and both attribute the condition to a trauma, and state that, in their opinion, death resulted from such injury. Dr. Neidermyer, who never saw decedent alive, while re-affirming his statement on the former hearing to the effect that "no other pathology was found", added that he believed Machala's death resulted from "coronary embolus". However, no attempt was made to determine that this was the cause at the autopsy, which Dr. Neidermyer admits was very unsatisfactory. Considering all of the attending circumstances, the evidence preponderates largely in favor of the theory advanced by Drs. Zink and Kirkland, whose testimony we have no reason to question.

This brings us to the phase of the case which seems to have influenced the Commissioner most in his finding. Did dece-

dent receive an injury in the course of his employment? True, nobody saw the alleged accident, and nobody knows anything about it except from decedent's own statements. However, evidence was introduced to the effect that decedent had never been injured before and was well and strong when he went to work on the day of his injury; that no harm came to him while on his way home from the mill with his fellow workmen, one of whom walked to within two blocks of his home; that decedent was not hurt in his home between the time of his return and the visit of the doctor at 9 o'clock the following morning; that nausea was not necessarily an immediate result of such an injury as disclosed by the autopsy; that it was not improbable that he could have continued working for a short time, and even have walked home thereafter; and that such injury, considering the nature of his employment, was not improbable.

To the foregoing we have the statement of Anna Machala that her husband told her less than two hours after reaching his home that he was hurt by the stoking bar striking him in the stomach half an hour before he quit work; the statement of Dr. Zink to the effect that Machala informed him of his injury on his first visit; the fact that one of the laborers who had accompanied him most of the way home the night before had been notified in the morning and on reporting to work at 3 o'clock that afternoon had informed one Matusic (decedent's boss) that decedent would not be at work that day on account of sickness due to getting hurt with the stoking iron, while at work the night before; and, also, that Anna Machala had a neighbor at the store call the company and ask for a doctor. The company did nothing until after death, at which time they directed Dr. Neidermyer to make a post mortem. None of the above is denied in any particular, except that the fellow-employees did not see claimant hurt, and did not learn of the injury until the following morning.

In our interpretation of the compensation act we must remember that our legislature has shown an earnest endeavor above everything else to give material justice its due while formal rules of jurisprudence are pushed aside. We do not cling to the letter but on the contrary the interpretation is to be

liberal and in keeping with the spirit of our legislation. Should not section 44 of our act be so read? It provides: "The commissioner shall not be bound by the usual common law or statutory rules of evidence, but shall adopt formal rules of practice and procedure as herein provided, and may make investigations in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out the provisions of this act." Code, chap. 15 p, § 44. I think that the statute is significant as revealing the method of interpretation which must be applied if the social benefits which the law was designed to promote are to be substantially realized. We have here not only the explicit sanction for a departure from the common law rules of proof but a direct legislative command that the commissioner shall not be bound by "comon law or statutory rules of evidence." My brother Maxwell, after a careful and exhaustive review of the authorities, on the former hearing of this case, reached the conclusion that an award may not be had upon hearsay alone, but that in view of our statutes it was proper to be considered in connection with competent and sufficient corroborating testimony. *Machala* v. *Compensation Com'r.*, *supra*. And that is the law of this case. *Moore* v. *Hutchinson*, 107 W. Va. 275; *Pickens* v. *Boone Timber Co.*, 66 W. Va. 10. But we must be careful not to enlarge the rules beyond those absolutely dependent upon the administration of substantial justice in each case. There may be cases when hearsay evidence may work injustice. Such evidence under our rule must sustain the acid test of its credibility when tested by the surrounding circumstances.

The applicant, in this sort of proceeding, as in others, has the burden of proving his claim. But evidence sufficient to make a reasonable person conclude that the decedent was injured while performing his duties in the course of his employment is sufficient. 2 Schneider on Comp., sec. 537. So the burden of proof rests upon the applicant to furnish evidence from which it can be logically drawn that the injury arose out of and in due course of the employment, but that such proof may be hearsay as well as direct. No rule may be laid down as to the degree of proof which is sufficient to justify

such recovery. If the evidence, though slight, is sufficient to make a reasonable person conclude that decedent was injured while performing his duties in the course of his employment or duties incidental to that employment, then that feature of the case is proved. This record discloses no appreciable contradiction on this determinative question. As this court said in *Poccardi* v. *Public Service Commission*, 75 W. Va. 542, 546: "In the absence of such contradiction, * * * the probability arising from the facts disclosed governs and concludes." Keeping in view the principles of law hereinbefore enunciated, and making application thereof to the case made, we are of opinion that the claimant has established that the injury, from which her husband later died, was received by him in due course of his employment.

We therefore reverse the case and return it to the commissioner with directions to ascertain what amount is due the claimant under the law, and provide payment therefor.

*Reversed with directions.*