GULF OIL CORPORATION v. McMANIGAL, Deputy Commissioner of United States Employees' Compensation Commission et al.

No. 208.

District Court, N. D. West Virginia.

March 3, 1943.

Frank W. Nesbitt, of Wheeling, W. Va., and John J. Griesinger, Jr., of Steubenville, Ohio, for plaintiff.

C. Brooks Deveny, Asst. U. S. Atty., of Clarksburg, W. Va. (Joe V. Gibson, U. S. Atty., of Clarksburg, W. Va., on the brief), for defendant.

BAKER, District Judge.

This is a proceeding brought to review a compensation order issued by Kenneth G. McManigal, Deputy Commissioner, pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act § 1 et seq., 33 U.S.C.A. § 901 et seq.

Considerable testimony was taken before the Commissioner and all of such testimony is incorporated in the bill of complaint as exhibits thereto. The case is now before the Court upon a motion to dismiss.

I feel that a statement of the facts, as shown by the complaint, including the testimony before the Commissioner, will facilitate a discussion of the legal questions involved.

### Statement of Facts.

On November 7, 1939, Edward Leon Miller was in the employ of the Gulf Oil Corporation as a "tankerman" on its tank barge, the "Allegheny." The barge was being towed down the Ohio River from Wheeling, West Virginia, to New Martinsville, West Virginia. Earlier in the day, while docked at Wheeling, Miller had injured his back while working with some of the engines on the barge, and he apparently experienced difficulty when he attempted to stoop over and complained that his back was injured.

The barge was being pushed by the towboat "Sewickley." Sometime in the evening Miller went to the towboat for the purpose of eating his supper, and at the completion of his meal and at about 6:30 p. m., he left the towboat to return to his post on the barge, stating that he was going to the barge and lie down and rest his back. As he left the kitchen of the towboat he was carrying in his hand a pencil belonging to one Herbert Lee Roberts, a member of the crew of the towboat. About forty-five minutes later, as the barge was nearing New Martinsville, it was discovered that Miller was not in his accustomed place.

A search of both the barge and towboat was made and Miller was not found. The pencil, which he was carrying in his hand when he left the kitchen of the towboat, was found alongside three steps which were near the port tow knee of the boat. These steps were narrow, being not wide enough for a man's shoe, and required some balancing upon the part of any one ascending them. The pencil was found about eighteen inches from the port tow knee. It would have been necessary for Miller to use these steps to get from the towboat to the barge. The pencil was dented, the point broken, and a part of the rubber eraser broken off, which was apparently a new break. Miller was wearing heavy shoes and heavy clothing. It was a cold, rainy, blustering night. The river at the point in question is from 1,500 to 2,000 feet wide, and the Captain of the towboat was staying as close to the center as possible. There was no handrail up the steps on the towboat. Miller could not have gotten off the boat in any manner without going into the river. The boat had not touched shore and no other boats had come alongside. The life raft, yawl, and all lifesaving equipment, were in proper place. Starting at approximately 7 o'clock a search was made of the river and banks, but Miller's body was never found. Miller was apparently in good spirits, good health, aside from his injured back, did not seem despondent in any way, and, according to his wife's testimony, had neither financial nor domestic difficulties.

The Allegheny was a tanker of 270 odd tons, net burden. The Allegheny had no means of propulsion nor navigation and was dependent entirely upon towboats; in this case, the "Sewickley," for all its movements. The Certificate of the Allegheny stated in part: "Whereof Gulf Oil Corporation is owner, and licensed tankerman on watch is Master." Miller held a Certificate as tankerman.

Miller lived in quarters on the barge, which quarters included facilities for preparing food. In practice, however, he customarily ate on the towboat as he did on the night in question. Miller had no control or direction over the handling of the barge once it began a journey. His duties consisted in supervising the loading and unloading of the barge, the maintenance of the equipment thereon, principally devices for pumping gasoline, and keeping the books and records of the barge. He had

the right to direct the Master of the towboat where to tie the barge up at the points at which it stopped and, in practice, sometimes assisted in the actual tying, but was under no duty to render such assistance. The Master of the towboat was in complete charge of the navigation of the barge at all times it was traveling.

The widow and stepchild of Miller filed a claim under the Longshoremen's Act, and the Deputy Commissioner having heard evidence to the general effect of that outlined above, made the followed finding: "that on said date said deceased employee while performing service for the employer upon the navigable waters of the United States sustained personal injury resulting in his death on said date while he was employed as a tankerman on the tank barge 'Allegheny'; that said barge was a vessel of 270 odd tons net burden, and was in push tow by the Towboat 'Sewickley' between Wheeling, W. Va., and New Martinsville, W. Va. on the Ohio River; that about 8:00 A. M., November 7, 1939, deceased employee when cranking engines on said barge strained his back and the rest of the day moved around with some discomfort and difficulty; that deceased employee ate supper on the Towboat 'Sewickley' between 5:45 P. M., and 6:30 P. M., as was customary and then started to return to his barge, the 'Allegheny' and on the way back to said barge accidentally fell into the Ohio River and was drowned; that this fatal accident occurred shortly after 6:30 P. M., November 7, 1939, at a point on the river near Natural Springs, W. Va.; that said fatal accident arose out of and in the course of his employment."

This suit is brought to enjoin the enforcement of the award under said finding upon two principal grounds:

(a) That Miller was a member of the crew and was Master of the tank barge "Allegheny" on the date and at the time of his disappearance, and so does not come within the class of persons entitled to seek compensation under the Longshoremen's and Harbor Workers' Compensation Act.

(b) That there is no evidence that Miller is dead or that, if dead, he came to his death in the course of employment or as a result of the accidental injury in the course of employment occurring upon the navigable waters of the United States. These two grounds will be considered in inverse order.

It is, of course, fundamental law, and so well established as to really not require the citation of authorities, that the findings of fact of the Deputy Commissioners, in cases of this kind, are not subject to judicial review and must be upheld if there is any substantial evidence to sustain them. See South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

Logical deductions and inferences which may be and are drawn by the deputy commissioner from the evidence should be taken as established facts and are not judicially reviewable. Michigan Transit Corporation v. Brown, D. C., 56 F.2d 200.

And the burden is on the plaintiff to show that there was no evidence before the Deputy Commissioner to support the compensation order complained of in the Bill. Grant v. Marshall, D. C., 56 F. 2d 654.

In this case, a consideration of all the evidence before the Commissioner not only shows that there was substantial proof of death from drowning, which occurred during Miller's employment, but, in fact, I feel that no reasonable man could read this testimony and come to any conclusion other than that Miller was drowned at substantially the time and place found by the Deputy Commissioner. It is true that Miller's body has never been recovered, but this situation was also present in the case of Salmon Bay Sand & Gravel Co. v. Marshall, 9 Cir., 93 F.2d 1, the syllabus of which reads:

"Evidence that workman was in good health and spirits when he boarded scow on which he worked, but was missing when scow reached port, and never seen again, held to authorize inferences that workman accidentally fell overboard and was drowned, while engaged in work. * * *"

The fact that no one saw Miller fall into the river is not important. As said in Associated General Contractors of America v. Cardillo, 70 App.D.C. 303, 106 F.2d 327, 329: "We should be construing the Act very narrowly if we held, in effect, that awards must be supported by eyewitness testimony. * * * Awards have been sustained in many cases of unwitnessed fatal injuries."

I feel that further discussion of this point is unnecessary, and hold that there was substantial evidence to justify the finding of the Deputy Commissioner.

The second ground; namely, that Miller was a Master or member of the crew and, hence, not covered by the Act, was the one really relied upon by counsel in their oral argument and stressed by counsel in their written brief. In argument Counsel stated that the Deputy Commissioner's finding that Miller was not a Master or member of the crew constituted a pure conclusion of law and, as such, is entitled to little or no weight in this proceeding. That position does not seem tenable in view of the language of the Supreme Court of the United States in South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 549, 84 L.Ed. 732. In that case in an unanimous opinion (Mr. Justice Murphy took no part in the consideration of the case), Chief Justice Hughes pointed out that the word "crew" does not have an absolutely unvarying legal significance, but it is necessary to consider the context of the particular use of the term. In this Opinion, the Court said:

"Regarding the word 'crew' in this statute as referring to the latter class, we think there was evidence to support the finding of the deputy commissioner."

From this it is apparent that the Supreme Court treats the question of who is, or who is not, a crew member as at least a mixed question of law and fact, and holds that the Commissioner's finding thereon is entitled to weight upon review.

This interpretation of the Bassett case seems to be sustained by the decision of the Ninth Circuit Court of Appeals in the case of Puget Sound Freight Lines v. Marshall, 125 F.2d 876, 878, in which the Court stated in part: "In the case of South Chicago [Coal & Dock] Co. v. Bassett, 309 U.S. 251, 258, 60 S.Ct. 544, 548, 84 L.Ed. 732, it was. urged that 'the question whether the decedent was a member of a "crew" was a question of law,' because the facts were undisputed. But the Supreme Court disagreed with that contention, saying that the 'word "crew" does not have an absolutely unvarying legal significance'. The court there held that the deputy commissioner's determination of the employee's status was conclusive and not subject to judicial review if supported by substantial evidence."

Without needlessly multiplying citations, it seems to me that the general law, as shown by a reading of the opinions of the various Courts that have passed upon the question, is well summarized by the Circuit Court of Appeals for the Second Circuit, in the case of Diomede v. Lowe, 87 F.2d 296, 298, when that Court said: "The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board."

In this instance, the plaintiff placed great reliance upon the fact that the General Rules and Regulations, prescribed by the Board of Supervising Inspectors of tank vessels, provided that: "The local inspectors shall make in the certificate of inspection of each tank vessel an entry of such complement of officers and/or crew as required by law and these rules and regulations. * * *"

Also that:

"Wherever these regulations refer to a certificated tankerman, the holder of a license as master, mate, pilot, or engineer shall be considered as qualified to perform all duties of such tankerman without being certificated as such." and

"In all cases where a certificate of inspection does not require at least two licensed officers, the local inspectors shall enter in the permit issued to any manned tank vessel subject to these regulations the number of the crew to be certificated as tankermen."

And that such Regulations further provide that:

"Provided, however, That towing vessels, while towing barges which are not required to be manned, shall carry in the regular complement of the towing vessel a sufficient number of licensed officers or certificated tankermen to provide at least one such licensed officer or certificated tankerman on each watch." and

"At least one member of the crew of a manned tank barge shall be on board at all times except * * *."

The plaintiff seeks to read these Regulations, together with the Certificate of Inspection, above referred to, which Certificate contains the words "and licensed tankerman on watch is Master," as requiring for the legal operation of the barge a certificated tankerman who would be either Master or a member of the crew. In other words, according to the plaintiff's argument, it was necessary to have one crew member who was a certificated tankerman, and the fact that Miller was the only man on the barge meant that he must be that

crew member or Master. This argument, however, likewise runs contrary to the opinion of the Supreme Court in the Bassett case. In that case the deceased had been included as one of three necessary deckhands in making up the ship's complement. In spite of this the Supreme Court sustained the Deputy Commissioner's finding that he was not a member of the crew. The Court said:

"We find little aid in considering the use of the term 'crew' in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen * * * were still regarded as distinct from members of a 'crew'. They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation."

This is merely a reiteration of the generally recognized principle that each statute must be construed by itself.

A case, whose facts seem rather similar to the one here, was that of De Wald v. Baltimore & O. R. Co., 71 F.2d 810, decided by the Fourth Circuit Court of Appeals, June, 1934. That case involved an employee upon a barge who was accidentally drowned. His duties consisted of "checking and supervising the loading and unloading of cargo from barges to steamships and vice versa (in this case Miller's duties consisted of supervising the loading and unloading of cargo from storage tanks to the barge and vice versa); seeing that the cargo was safely loaded and unloaded (identical in the instant case); making a record of all damaged freight; signing receipts for cargo loaded and unloaded (in this case keeping a complete record and books on the disposition of the cargo); opening and closing hatches on barges and putting in gang-way boards; pumping water out of the barges, and making lines fast and unfast at docks or alongside vessels when the barges were moved about the harbor."

The only substantial differences between the De Wald case and the case at bar is that in the former De Wald slept on land, in this case Miller slept on the barge; and De Wald was paid a daily wage, while Miller was paid a monthly wage. I do not feel that these two distinctions are vital enough to take this case out of the rules

pronounced by the Fourth Circuit Court of Appeals in the De Wald case, and that under that decision, and the decision of the Supreme Court in the Bassett case, it is necessary to sustain the Commissioner's finding that Miller was not a member of the crew or Master. Of course, all this is strengthened by the Act itself, in which it provides:

"In any proceeding for the enforcement of a claim for compensation under this Act [chapter] it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this Act [chapter]." 33 U.S. C.A. § 920.

■ I feel that there is substantial evidence to sustain the Commissioner's finding in its entirety. This finding being sustained, the action must fail, and the motion to dismiss be granted.

■ Since the bill is to be dismissed, it follows as a matter of course that the interlocutory injunction, heretofore awarded, should be dissolved. If the plaintiff desires to appeal from the Court's action, I feel that the temporary injunction should be restored during the pendency of such appeal. See Rule 62(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. I am sure that counsel can agree upon equitable terms as to a bond to safeguard the defendants from any injury arising from such restoration of the temporary injunction.

Counsel are directed to prepare an order carrying out the rulings of this memorandum.