VIRGIE M. EVANS, WIDOW OF JESS B. EVANS

*v.*

STATE COMPENSATION DIRECTOR, AND
MINDEN SEWELL COAL COMPANY

(No. 12478)

Submitted September 7, 1965.    Decided October 19, 1965.

162

*Calhoun, Judge,* dissenting.

*Thornhill, Thornhill & Kennedy, David T. Kennedy,* for appellant.

*Mahan, Higgins, Thrift & Graney, Patrick C. Graney, Jr.,* for appellee.

BERRY, JUDGE:

This is an appeal by the claimant Virgie M. Evans, the widow of Jess B. Evans, from an order of the Workmen's Compensation Appeal Board dated May 10, 1965, affirming the ruling of the Workmen's Compensation Director which denied compensation benefits to the claimant on the ground that her husband's death was not due to an injury received in the course of and as a result of his employment. The claimant's decedent, Jess B. Evans, died January 2, 1963. Application for benefits under the Workmen's Compensation Law was filed by the claimant on August 21, 1963, alleging that the decedent's death was due to an injury sustained by him on May 7, 1962, while he was working for the employer, Minden Sewell Coal Company. On September 12, 1963, the Workmen's Compensation Director rejected the claim on the ground that her husband's death was not due to an injury received in the course of and as a result of his employment, to which ruling a protest was filed and full hearings held, after which the Director on December 7, 1964, affirmed the former ruling which resulted in this appeal.

The evidence taken at the hearings held in connection with this claim is to the effect that the claimant's decedent was apparently working alone as a tipple mechanic at the mine of the employer on May 7, 1962, and after returning to his home from work on that day he told his wife that he had fallen while at work and injured the left side of his back just above the waist. His wife testified that after he told her about falling and injuring himself he showed her a red bruise mark on his back in the area indicated above. She testified that he appeared to be nervous and in pain, that he took some aspirin and bufferin and went to bed; that at the request of her husband she called his foreman, Mr. Clifford Davis, and after getting Mr. Davis on the telephone she heard her husband tell him that he had been injured that day and probably would not be able to work the next day. (Mr. Davis did not testify at the hearings.) The claimant's decedent remained at home on May 8, 1962, but returned to work on May 9, 1962. William Harmon, a fellow-employee, testified that when he, Harmon, returned to work around May 14, 1962, after being confined to a hospital, claimant's decedent told him that he had fallen and injured his back while working and that he complained of his back hurting him at that time. Mrs. Evans stated that about a week or ten days after the injury her deceased husband was still having pain in his back which was causing him so much trouble that he went to see Dr. J. B. Thompson, the family doctor. Dr. Thompson testified that when the claimant's decedent came to see him for treatment he gave him a history that he had fallen on an angle iron while working for the employer on May 7, 1962. He stated that he observed no bruises on the body of claimant's decedent at the time he examined him, although he complained of soreness on the left side of his back and that he treated him for prostate trouble. This was done because he had treated him before for the same trouble and by virtue of his complaints he continued the same treatment. The claimant's decedent visited this doctor several times during May and June, 1962, and the treatment remained the same. On June 7, 1962, Dr. Thompson found blood in the urine. The claimant's decedent was referred to Dr. Ray M. Bobbitt, Huntington, West

Virginia, whom he visited on June 8, 1962. Dr. Bobbitt, after examining Mr. Evans, reported to Dr. Thompson that he felt he might have a low grade nephritis, but that it remained to be proved. Dr. Bobbitt recommended that he be hospitalized although this was not done because claimant's decedent was anxious to accumulate sufficient time in order to qualify for his pension, which was accomplished the latter part of June, 1962.

Claimant's decedent was admitted to the Beckley Memorial Hospital on August 3, 1962, where he was examined by Dr. W. A. Laqueur who diagnosed his trouble as nephrosis syndrome. He was released from this hospital on September 29, 1962, was readmitted on November 19, 1962 and remained until November 30, 1962, was readmitted December 11, 1962 and discharged on December 24, in order to spend Christmas at home. On January 2, 1963 he entered the hospital again and died a few hours after his admission. Dr. Laqueur performed an autopsy which revealed that prostatitis for which he had originally been treated had no connection with his illness and death. The examination of claimant's decedent while he was a patient in the Beckley Memorial Hospital was diagnosed as nephrotic syndrome and he was treated for nephrosis. The autopsy revealed that he had a renal thrombosis which resulted in nephrosis. It was Dr. Laqueur's opinion that trauma or injury to the back would case the renal thrombosis resulting in nephrosis which could be clinically diagnosed. However, the thrombosis of the renal vein could not be diagnosed. The immediate cause of the death of claimant's decedent was "bronchopneumonia, diffuse, bilateral, upper lobes, staphylococcic". The treatment given to the claimant's decedent for nephrosis was very heavy doses of cortisone which did relieve his condition and prolonged his life. However, the heavy doses of cortisone made him immune to antibiotics and as a result thereof he developed a staph infection and pneumonia which was the immediate cause of his death. Dr. Laqueur's testimony clearly indicates that had not this treatment been administered the claimant's decedent would have died much sooner from nephrosis developed from the

renal thrombosis caused by an injury to his lower back. Dr. Laqueur's findings were supported by Dr. Peter Ladewig, a pathologist from Charleston, to whom the employer referred the medical record in this case. The last paragraph of Dr. Ladewig's report, which was filed in this case and made a part of the record, reads as follows:

"In summary, it is my opinion that Jess Evans' illness was triggered by the mine injury leading to a thrombosis of the renal vein which in turn caused a relentlessly progressing nephrotic syndrome treated, among others, by long-standing steroid administration; whereupon death ensued as a complication of both the original illness and its treatment."

It is the contention of the claimant that the Workmen's Compensation Appeal Board erred in its finding that this claim was not compensable and thereby affirming the Workmen's Compensation Director's ruling.

It is the contention of the employer that the claimant has failed to prove by competent evidence: (1) That her deceased husband received an injury in the course of and as a result of his employment, and therefore the claim is not compensable; and (2) that the claimant has also failed to prove that the disability was continuous from the date of the alleged injury until the date of his death, and therefore the claim is not compensable under the provisions of Code, 23-4-10, as amended.

It is the employer's position that there is no evidence other than "hearsay" in the record of this case to support the allegation that claimant's decedent suffered an injury while employed by the employer on May 7, 1962.

The recent case of *Helen E. Hoff* v. *State Compensation Commissioner*, 148 W. Va. 33, 132 S. E. 2d 772, is relied on to support this contention. In the *Hoff* case the only evidence supporting the claimant's contention that she was entitled to compensation as a result of injury was the statement of a deceased doctor contained in the file of the Commissioner. He did not testify at any hearing and was not subjected to cross examination. This ex parte statement,

even though it was made at the direction of the Commissioner under authority of Code, 23-4-8, as amended, was hearsay evidence, and this Court held that an award of compensation could not be made on hearsay evidence alone. However, there is much more evidence in the case at bar to establish the fact that the claimant's recedent received a compensable injury than was presented in the *Hoff* case.

It is true that there is considerable hearsay evidence in the hearings held in connection with this claim but at no time was there any objection interposed by the employer to any of this testimony, and the reports of Doctors Laqueur, Ladewig and Bobbitt were submitted into evidence and made a part of the record by agreement. It is generally held that if incompetent or hearsay evidence is admitted without objection it may be considered as evidence in the case and given such weight as is warranted, even if the trial is before a jury. *Magruder* v. *Hagen-Ratcliff & Co.,* 131 W. Va. 679, 50 S. E. 2d 488; *Gutshall* v. *Hamilton, et al.,* 134 Va. 416, 114 S. E. 595; *Newberry* v. *Watts,* 116 Va. 730, 82 S. E. 703.

In addition to the hearsay evidence presented in the instant case there is also direct and circumstantial evidence as well as evidence introduced under the exceptions to the hearsay rule. The testimony of the claimant that she saw a bruise on the body of her husband which he said he had received in a fall while at work for the employer, her testimony with regard to the telephone call to her deceased husband's foreman and the reporting of his injury over the telephone all support and bolster the other hearsay evidence in this case. The testimony of the family doctor with regard to his medical conclusions reached or based on the history given to him by the claimant's decedent with regard to his subjective symptoms is an exception to the hearsay rule. *Sutherland* v. *Kroger Co.,* 144 W. Va. 673, 110 S. E. 2d 716; *Foulkrod* v. *Standard Accident Ins. Co.,* 343 Pa. 505, 23 A. 2d 430, 67 A.L.R. III, page 15.

The failure on the part of the employer to have the foreman of the claimant's decedent testify with regard to the telephone conversation, in which was reported the injury

received in the course of and as a result of his employment, justifies a presumption that this evidence is true. *Arbogast v. Shields,* 123 W. Va. 167, 14 S. E. 2d 4.

The fact that no one saw claimant's decedent fall and injure his back is not important. Many injuries have been held compensable where there have been no eye witnesses to an accident causing an injury. *Machala v. State Compensation Commissioner,* 109 W. Va. 413, 155 S. E. 169; *Gulf Oil Corp. v. McManigal,* 49 F. Supp. 75.

The *Machala* case cited above is almost identical to the case presented here. The question involved in that case was whether the claimant's decedent received an injury in the course of and as a result of his employment. No one saw the alleged accident and no person knew about it except from the decedent's own statements. The claimant testified that her husband told her when he came home that he had been hit by a stoking bar striking him in the stomach before he quit work. The doctor who attended him testified to the effect that claimant's decedent had informed him of his injury on his first visit. One of the claimant's fellow-employees testified that he had informed the boss of claimant's decedent about the injury the day following the accident. This Court in that case cited the statute which says that the Compensation Commissioner shall not be bound by the usual common law or statutory rules of evidence, Code, 23-1-15, and further held that under the law laid down in the first appeal of the *Machala* case, *Machala v. Ott, State Compensation Commissioner,* 108 W. Va. 391, 151 S. E. 313, that: " * * * an award may not be had upon hearsay alone, but that in view of our statutes it was proper to be considered in connection with competent and sufficient corroborating testimony." The Court further stated in the second appeal of the *Machala* case, *Machala v. Ott, State Compensation Commissioner,* 109 W. Va. 413, 416, 155 S. E. 169, that:

> "The applicant, in this sort of proceeding, as in others, has the burden of proving his claim. But evidence sufficient to make a reasonable person conclude that the decedent was injured while perform-

ing his duties in the course of his employment is sufficient. 2 Schneider on Comp. sec. 537. So the burden of proof rests upon the applicant to furnish evidence from which it can be logically drawn that the injury arose out of and in due course of the employment, but that such proof may be hearsay as well as direct. No rule may be laid down as to the degree of proof which is sufficient to justify such recovery. If the evidence, though slight, is sufficient to make a reasonable person conclude that decedent was injured while performing his duties in the course of his employment or duties incidental to that employment, then that feature of the case is proved."

It was held in that case that the evidence supported a finding in favor of the claimant.

The medical evidence in the case presented here is to the effect that the injury led to a thrombosed renal vein which in turn caused nephrosis, and that the death of claimant's decedent was caused by a complication of both the nephrosis and its treatment. It has been held that where death ensues because an injury is responsible for a lack of resistance to an infection, the causal connection can be traced directly to the injury. *Lockhart, etc.* v. *State Compensation Commissioner et al.,* 115 W. Va. 144, 174 S. E. 780. Where serious disability is attributed to an injury suffered by an employee which arises out of and in the course of employment and death results therefrom, the claim is compensable. *Vankirk* v. *State Compensation Commissioner,* 144 W. Va. 447, 108 S. E. 2d 567. Where there is a causal connection between an injury received by an employee in the course of and resulting from his employment and his death, a claim for compensation in such case is allowable. *Fennell* v. *Maryland Casualty Company,* (Tenn.) 344 S. W. 2d 352. Evidence in the instant case supports the finding that claimant's decedent received an injury in the course of and as a result of his employment, and we so hold.

Another contention of the employer that this claim is not compensable is that the claimant has failed to prove that the claim complies with the provisions of the dependency statute that the disability of the claimant's decedent was continu-

ous from the date of the injury until the date of his death, because the claimant returned to work after being injured. The statute in question upon which this claim is based, Code, 23-4-10, as amended, reads in part as follows:

"In case of personal injury other than silicosis or other occupational disease, suffered by an employee in the course of and resulting from his employment, causes death within the period of six years and *disability is continuous* from date of such injury until date of death \* \* \* the benefits shall be in the amounts and to the persons as follows:" [Italics supplied]

It will be noted that the statute merely requires that the disability be continuous from the date of the injury until the date of the death and it does not say that the disability must be total as is found in statutes in other states in cases cited in employer's brief.

The common definition of disability means some "impairment", which may be either total or partial. A person may be injured but continue to work although he still has a partial disability. 99 C.J.S., Workmen's Compensation, §302 (1958).

The evidence in this case is clear that the disability of claimant's decedent continued from the time of the injury until the time of his death, and although he worked, he was still suffering from the disability caused by the injury. He continued to see doctors with regard to the disability and was treated for it at the hospital. It has been held that one can receive compensation for a disability even though he continues to work. *Blosser* v. *State Compensation Commission, et al.,* 132 W. Va. 112, 51 S. E. 2d 71; *Walk* v. *State Compensation Commissioner, et al.,* 134 W. Va. 223, 58 S. E. 2d 791. We are, therefore, of the opinion that under the facts in the case at bar the disability of claimant's decedent was continuous from the date of the injury until the date of his death and that it meets the requirements of the provisions of Code, 23-4-10, as amended.

For the reasons stated herein, we are of the opinion that the evidence in this case clearly shows that the claimant has

sufficiently proved that an injury was received by her deceased husband in the course of and as a result of his employment; that there is sufficient medical evidence to indicate a causal connection between the injury and the disability suffered by claimant's decedent and that the disability was continuous from the date of the injury until the date of his death; and that the claim is compensable.

The orders of the Appeal Board and the Director are reversed, the case is remanded with directions that the claimant be awarded compensation.

*Reversed, with directions.*

CALHOUN, JUDGE, dissenting:

Respectfully I dissent from the Court's decision as expressed in the majority opinion. My dissent relates to the matters dealt with in the first, second and third points of the syllabus. I agree with that portion of the decision which is summarized in the fourth point of the syllabus.

It is difficult for me to conceive of a weaker case factually than that in behalf of the claimant in this case on the question of causal connection between his former employment and his disability. It is not sufficient that medical testimony may establish that the claimant's disability may have resulted from a trauma. There must be some reasonable showing that the alleged trauma was caused during the course of and as a result of the employment.

Both the commissioner and the appeal board found that proof of causation was inadequate. I believe we should assume that the commissioner and members of the appeal board are fully as solicitous of the plight of injured workmen and as competent to make factual determinations as are the members of this Court. Reason dictates that we should give due respect to their factual findings in the light of their experience in making such determinations.

Not only does reason dictate that we should respect the factual findings of the commissioner and particularly of the appeal board, especially where, as in this case, the findings

are so abundantly supported by the proof; but we should remain mindful of the fact that a legal duty to do so is enjoined upon us by Code, 1931, 23-5-4a, as amended, and by innumerable prior decisions of this Court. We should not merely give lip service to the duty imposed upon us by law in this respect, whether we are reviewing a finding in favor of a claimant or one adverse to him.

The Court has consistently held that the liberality rule must be respected and adhered to but that it can never be regarded as an adequate substitute for reasonable proof.

It is quite true that Code, 1931, 23-1-15, provides that the commissioner "shall not be bound by the usual common law or statutory rules of evidence." The Court has held that this statute applies also to proceedings before the appeal board. *Hayes* v. *State Compensation Director et al.*, 149 W. Va. 220, 140 S. E. 2d 443, 445. In the light of the statute referred to immediately above, the Court has held that hearsay testimony may be considered, along with other proof, in workmen's compensation cases. Nevertheless, the Court recently reiterated a proposition, hitherto regarded as sound, as follows: "It has been repeatedly held that an award of compensation cannot be made on hearsay alone." *Hoff* v. *State Compensation Commissioner et al.*, 148 W. Va. 33, 36, 132 S. E. 2d 772, 775. See also *Machala* v. *State Compensation Commissioner*, 109 W. Va. 413, 155 S. E. 169.

In my judgment there is not a scintilla of direct testimony in this case tending to any appreciable degree to prove a causal relationship between any disability the claimant may have and his former employment. All testimony in the case tending even remotely to establish that essential element is hearsay of the rankest sort and self-serving in nature.

The majority opinion seems to imply that if hearsay testimony comes into the case without objection, it thereby, in some mysterious way, becomes clothed with a credibility or trustworthiness which otherwise would not attach to it. Hearsay testimony is admissible in a workmen's compensation case but, in my judgment, it must be weighed in the light of the legally recognized inherent weakness and un-

reliability of hearsay testimony. It still remains hearsay testimony and, though proper to be considered, it remains fraught with the inherent weakness universally attached to such testimony. I apprehend that this is the reason this Court has held that hearsay evidence may be considered merely "in connection with competent and sufficient corroborating evidence." *Machala* v. *State Compensation Commissioner,* 109 W. Va. 413, pt. 1 syl., 155 S. E. 169. While admissible, its nature dilutes its weight. Certainly nobody would contend that hearsay testimony is entitled to the same weight as direct testimony. "There may be cases when hearsay evidence may work injustice. Such evidence under our rule must sustain the acid test of its credibility when tested by the surrounding circumstances." *Machala* v. *State Compensation Commissioner,* 109 W. Va. 413, 416, 155 S. E. 169, 170. "Of course, the weight of hearsay evidence is minimized by the same inherent weaknesses which are grounds for its exclusion when proper objection is made." 20 Am. Jur., Evidence, Section 452, page 402. To the same effect, see 88 C.J.S., Trial, Section 153, page 299. To the extent that the majority opinion implies, if it does, that hearsay testimony is strengthened and its inherent unreliability removed merely because no objection to its admissibility was made before the commissioner, I respectfully disagree. When hearsay testimony reaches the appeal board or this Court in a workmen's compensation case, I do not understand that the weight to be accorded to it depends upon whether objection to it was or was not made before the commissioner.

Cases cited in the majority opinion for the proposition that testimony which otherwise would be inadmissible is proper if admitted without objection are, in my opinion, wholly inapposite. First, they involved trial court cases rather than workmen's compensation cases. It is difficult for me to comprehend the force of the majority opinion to the extent that, on one hand, it recognizes the admissibility of hearsay testimony before the commissioner, and, on the other hand, seems to hold that, for some reason not clear to me, added weight must be accorded to such testimony if no objection

was made to it, when offered before the commissioner, on the ground that, as hearsay, it was improper. Does this imply that the commissioner has the legal right to rule on the admissibility of hearsay testimony and to exclude it, so that the appeal board and this Court would be deprived of the benefit of it?

For the proposition stated in the first point of the syllabus, three cases are cited, all involving cases arising in trial courts. In *Magruder v. Hagen-Ratcliff & Co.*, 131 W. Va. 679, 50 S. E. 2d 488, it is stated in the body of the opinion that hearsay testimony admitted without objection in a jury trial may be considered as evidence in the case. That adds nothing to the force of the statute dealing with admissibility of evidence before the commissioner. The Court did not undertake to state what weight should be given to such evidence. *Newberry v. Watts*, 116 Va. 730, 82 S. E. 703, is to the same effect. In *Gutshall v. Hamilton et al.*, 134 Va. 416, 114 S. E. 595, cited in the majority opinion, the Court held, in the fourth point of the syllabus, that, in an ejectment action tried by a jury, opinion evidence of a surveyor as to the location of the defendant's lands, admitted without objection, "had no probative value."

I can understand that if a witness were disqualified merely by the Dead Man's Statute, or because of the husband-wife relationship, and if, without objection, such witness were permitted to give relevant testimony based on personal knowledge, such testimony might be accorded the same weight to which it would be entitled if the witness were not disqualified. Such testimony would not be inherently unreliable, as hearsay testimony is universally recognized to be. Testimony admitted under exceptions to the hearsay rule is admitted because the circumstances supply the element of credibility or trustworthiness, as, for instance, in case of spontaneous exclamations or admissions against interest. But purely hearsay testimony is universally regarded in law as inherently unreliable, and, in my judgment, such unreliability is enhanced in this case by the fact that the testimony is not only hearsay but also self-serving in nature.

The claimant's wife testified that he told his foreman by telephone that he had been injured while at work and that he would not report to work next day. The majority opinion states that the failure of the employer to call the foreman as a witness "justifies a presumption that this evidence is true." Does this imply that there was thereby created a presumption that the claimant received an injury during the course of and as a result of his employment? If so, I respectfully disagree. If the foreman had testified, he could only have denied or affirmed that such report was made to him by telephone. The self-serving, hearsay element remains in any event.

Finally, I am troubled because the majority opinion may be construed to hold that any statement made by a patient to a physician is admissible as an exception to the hearsay rule. I understand that the exception to the hearsay rule, if it be truly such, arising from statements made by a patient to his physician for purposes of diagnosis and treatment, is quite narrow in scope. If the rule were otherwise, the patient could completely circumvent and wholly destroy the hearsay rule by relaying hearsay evidence to the trier of fact through the medium of some physician of his own selection.

Innumberable cases from appellate courts throughout the land are cited for the following summarization made in connection with an annotation appearing in 67 A.L.R. at page 25: "Statements by an injured person *as to the cause of the injury, and the circumstances attending the accident,* made to a physician so long thereafter as not to be part of the res gestae, are not admissible, since they are a narration of a past event." (Italics supplied.) In connection with an annotation of the same subject, numerous additional cases are listed in 130 A.L.R. at page 983.

"* * * Only such statements, however, as are made for the purpose of securing, and which are necessary to secure, proper diagnosis and treatment are admissible.

"Narrative statements to a physician are to be rejected where they relate to facts not connected with

diagnosis and treatment, such as the cause of an illness or injury, * * *." 31A C. J. S., Evidence, Section 246b, pages 655-56.

For reasons stated, I am unable to agree that the factual finding made by the appeal board is clearly wrong. On the contrary, I believe it is clearly right; and I would affirm the action of the appeal board in denying the claim.