Tom A. Whitt

*v.*

State Workmen's Compensation Commissioner
*and* Olga Coal Company

(No. 12881)

Submitted February 3, 1970.     Decided February 17, 1970.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellant.

*R. L. Theibert,* for appellees.

BROWNING, PRESIDENT:

This is an appeal by Olga Coal Company from a final order of the Workmen's Compensation Appeal Board entered June 30, 1969. That order reversed an order of the Workmen's Compensation Commissioner entered January 21, 1969, which held appellee's disability was not due to an injury received in the course of and resulting from his employment and thus was not compensable.

Appellee, hereinafter referred to as "claimant", was employed as a boom operator at the appellant's coal tipple. On September 20, 1966, after working about an hour, claimant became nauseous and dizzy. He informed his supervisor of his illness and was relieved by another employee. Thereafter, he went to the bathhouse to take a shower. While in the shower, he fell and struck his head. Claimant alleges that at the time he was still dizzy and knew nothing about the injury until he came to just before reaching the hospital.

The theory of the injury advanced by the claimant is that the coal in the coal cars is sprayed with various chemicals, and that the fumes from these chemicals cause nausea and dizziness to those who inhale them. He testified that he had become ill on several previous occasions for the same reason. Two other employees also testified that they had become ill from the fumes. Neither the claimant nor his witnesses stated they had ever lost con-

sciousness or fainted as a result thereof. Claimant had been previously treated by a physician for dizzy spells, and in a letter to the Workmen's Compensation Commissioner the physician, Dr. Castrodale, stated:

> Mr. Whitt had been seen by me on several occasions prior to the date of the accident. On several occasions, Mr. Whitt complained of episodes of dizziness as part of a symptomatology. He has had shortness of breath, associated with chronic pulmonary insufficiency, due to chronic obstructive pulmonary emphysema.
>
> I do not believe that it can be stated with certainty that the syncopal attack of 20 September, 1966 was directly related to any previous illness which the patient might have had. Of course, the cerebral concussion, lacerations, contusions, and abrasions about the face and head were a direct result of trauma sustained as a result of the fall.

Claimant also testified that he had filed claims for insurance benefits, stating that his disability was due to sickness, and had filed a claim for disability from April 26, 1965, to June 1, 1965, alleging sickness of the same type which occurred in September, 1966. Also he had filed claims for benefits in November and December, 1966, and February and April, 1967, in all of which he stated that the disability was due to sickness. He was paid insurance benefits for twenty-six weeks, and did not file for compensation benefits until the insurance benefits ran out.

By order entered September 20, 1967, the claim was held compensable. On protest by the employer, the Commissioner, on January 21, 1969, set aside the prior order and held the injury not compensable. On appeal by claimant, the Appeal Board reversed the Commissioner on June 30, 1969. We granted an appeal by the employer on October 6, 1969.

There is no direct evidence in this record to the effect that the claimant became ill as a result of inhaling fumes while at his work and fell while in the bathhouse

as a result of the inhalation of those fumes thereby injuring himself. In answer to a question as to whether the fumes caused him to fall, the claimant himself specifically stated, "I can't say whether they did or not." There is no denial in the testimony of the claimant that he had had other attacks at home and apparently at least one while driving his car where he was most certainly not subjected to the inhalation of the fumes which allegedly caused his fall. He does not deny the testimony of his physician that the latter advised him not to drive his automobile because of his physical condition. The claimant comes before this Court, however, armed with two rules favorable to claimants in compensation cases which are based on prior decisions of this Court: (1) the liberality rule, and (2) the weight that is to be given to a factual finding of the appeal board by this Court.

The so-called "liberality rule" appeared in the first Workmen's Compensation Act. Acts of the Legislature, 1913, ch. 10, § 44, read as follows:

> Such commission shall not be bound by the usual common law or statutory rules of evidence, or by any technical or formal rules of procedure, other than herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly and *liberally* the spirit of this act. (Emphasis added.)

Acts of the Legislature, 1915, ch. 9, § 44, read substantially the same except that the Workmen's Compensation Act passed at that time created the office of compensation commissioner. The Act was again revised and passed anew in 1919. Acts of the Legislature, 1919, ch. 131, § 44, read as follows:

> The commissioner shall not be bound by the usual common law or statutory rules of evidence, but shall adopt formal rules of practice and procedure as herein provided, and may make investigations in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out the provisions of this act.

It will be noted that the "liberality" language was omitted by the legislature in 1919. The Code of 1923, ch. 15P, § 44, was a re-enactment of the very same language. The Code of 1931, ch. 23, art. 1, § 15, merely changed the last word of the section from "act" to "chapter." The section reads the same today except that somewhere along the way the publisher of our unofficial Code has added a hyphen in "common law." Today, there is no provision in the workmen's compensation law requiring the commissioner, the appeal board, or this Court to apply a rule of "liberality" either in construing the workmen's compensation law or appraising the evidence in a workmen's compensation case. In the very early case of *Caldwell* v. *Compensation Commissioner,* 106 W. Va. 14, 144 S. E. 568, this Court held that "a spirit of liberality" should be employed in applying the provisions of the Workmen's Compensation Act. The reason for the rule in the early cases was that the "beneficent purposes" of the Act might be realized. However, another equally important reason might have been the Court's reliance on its even earlier decisions which, prior to 1919, had only to apply the "liberality" language contained in the pertinent section of the Act.

In *Machala* v. *Compensation Commissioner,* 109 W. Va. 413, 155 S. E. 169, the rule was extended to the *construction and interpretation of evidence.* It would appear from that opinion that the basis for the decision was the language of Code, 23-1-15, directing that the "commissioner shall not be bound by the usual common law or statutory *rules* of evidence." (Emphasis added.) This language has not been changed since the original Act of 1913. The rule was carried into many cases thereafter. The Act of the legislature which created the Workmen's Compensation Fund and established the department of the executive branch of the government of this State to administer it was remedial and all subsequent amendments fall into the same category. This Court has consistently held that legislation which is remedial in nature must be liberally construed. *Willis* v. *O'Brien,* 151 W. Va. 628, 153 S. E.2d 178; *Esque* v. *Huntington,* 104 W. Va. 110, 139 S. E. 469. This Court has appar-

ently extended that rule of liberality to the consideration of evidence in contested workmen's compensation cases.

The rule by which the commissioner, the appeal board, or this Court determines the quantum of proof required by a claimant in a workmen's compensation case has been stated many times, although not always consistently. In *Machala* v. *Compensation Commissioner*, 108 W. Va. 391, 151 S. E. 313, the Court stated that awards should not be made out of the fund "unless there be a satisfactory and convincing showing" that the injury was received as alleged. In *Poccardi* v. *Public Service Commission*, 75 W. Va. 542, 84 S. E. 242, this is a portion of the second syllabus point: "[I]f the evidence would sustain a verdict of a jury in favor of the claimant, the claim is regarded as sufficiently proved." In *Poccardi* v. *Ott*, 82 W. Va. 497, 96 S. E. 790, this is the rule laid down: "Wherefore, if, upon a submission to a jury, a verdict had been rendered in support of her claim based upon such proof, we would not hesitate to approve the finding. This is a safe and equitable test or criterion *in view of the liberality expressed in the statute of this state on the subject.*" (Emphasis added.) In *Morris* v. *Compensation Commissioner*, 135 W. Va. 425, 64 S. E.2d 496, this statement is contained in the opinion: "While it is incumbent upon the claimant to establish her claim by a preponderance of the evidence, this may be, and is, done by establishing physical facts that would warrant an inference . . . ." In the recent decisions of this Court it has been held that the burden is carried if proof is provided by a claimant that is "satisfactory." It is not necessary to determine in this case whether "satisfactory," "convincing," and "preponderance," as used in previous opinions of this Court are synonymous. In *Eady* v. *Commissioner*, 148 W. Va. 5, 132 S. E.2d 642, is this statement: "This Court has consistently applied the liberality rule in the interpretation of evidence in workmen compensation cases; but it has also repeatedly held that though informality in the presentation of evidence is permitted in compensation cases and that the liberality rule will be invoked in appraising the evidence presented, nevertheless

the burden of establishing a claim rests upon the person who asserts it and no rule of liberality will take the place of the requirement that the claim must be established by proof."

As to the rule regarding the weight that is to be given to factual findings of the appeal board by this Court, we are commanded by Code, 23-5-4a, as amended, as follows:

> In a judicial proceeding to review a decision of the board, the findings of fact of the board shall have like weight to that accorded to the findings of facts of a trial chancellor or judge in equity procedure.

The following language appears in the opinion of *McGeary v. Compensation Director,* 148 W. Va. 436, 135 S. E.2d 345: "This Court has held in several decisions that if the order of the appeal board 'appears clearly to have been wrong', 'is clearly wrong', 'is plainly wrong' or 'where the facts are undisputed, and the record will admit of reasonable inferences favorable to the claimant', such ruling will be set aside by this Court. *Morris v. State Comp. Com'r.,* 135 W. Va. 425, 64 S. E.2d 496; *Walk v. State Comp. Com'r.,* 134 W. Va. 223, 58 S. E.2d 791; *Rasmus v. Workmen's Comp. App. Bd.,* 117 W. Va. 55, 184 S. E. 250."

Upon a review of these principles of law applicable to workmen's compensation appeals and upon a careful consideration of the claimant's evidence, it is the view of this Court that the order of the board was clearly wrong and must be reversed. The evidence upon which that conclusion is based has been related hereinbefore and will not be repeated. It is apparent that the board arrived at its conclusion by imposing an inference upon an inference which is not permissible to establish an evidentiary fact. *See* 7 M. J., *Evidence* § 39, citing *State v. Corbin,* 117 W. Va. 241, 186 S. E. 179. *See also Crotty v. Virginian Ry.,* 115 W. Va. 558, 177 S. E. 609. There was evidence from which the board could have inferred that the claimant might have inhaled noxious fumes while at his employment although there was no direct proof to that effect. Based upon the inference that he did inhale such fumes and

become ill thereby, the board further inferred that as a result thereof he fell while taking a shower in the bathhouse and injured himself. There is not one scintilla of evidence to support that finding. It will be recalled that the claimant testified that he did not know what caused him to "pass out." He had had similar "attacks" away from his place of employment. The cautious negative statement by Dr. Castrodale, "I do not believe that it can be stated with certainty that the syncopal attack of 20 September, 1966 was directly related to any previous illness which the patient might have had," falls far short of meeting the proof required even in a workmen's compensation case.

The order of the Workmen's Compensation Appeal Board of June 30, 1969, is reversed. This decision will be certified to the Workmen's Compensation Appeal Board and the Workmen's Compensation Commissioner.

*Reversed.*