WILLIAM E. HAYES

*v.*

STATE COMPENSATION DIRECTOR, *et al.*

(No. 12391)

Submitted January 13, 1965.   Decided February 23, 1965.

*Dayton, Campbell & Love, George W. S. Grove, Jr.,* for appellant.

*George W. Stokes,* for appellees.

CALHOUN, JUDGE:

This case is before the Court on appeal from an order entered by the workmen's compensation appeal board on September 10, 1964, which affirmed an order entered previously by the state compensation director holding that William E. Hayes, the claimant, received a compensable injury on December 9, 1961, while employed by Mount Vernon Farm Dairy Products, Inc., the appellant.

The basic question presented for decision is whether the proof is sufficient to justify the factual finding by the appeal board that the claimant sustained a personal injury in the course of and resulting from his employment.

The claimant filed an application for benefits on November 17, 1962, in which he alleged that he received a back injury on December 9, 1961. The employer disclaimed any prior knowledge of such an injury and requested an investigation. The request was granted and an investigation was made by Charles C. Morris, one of the director's investi-

gators. By an order dated January 30, 1963, the director held that the claim was compensable. The employer protested and a formal hearing was held, at which various witnesses appeared and testified. The director, by order entered on April 10, 1964, affirmed his earlier order of January 30, 1963, thereby holding that the claim was compensable. On appeal by the employer, the appeal board entered an order on September 10, 1964, by which it affirmed the finding of the director.

Code, 1931, 23-5-4a, as amended, provides that, on appeal to this Court, "the findings of fact of the board shall have like weight to that accorded to the findings of facts of a trial chancellor or judge in equity procedure." Findings of fact made by a trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless clearly wrong or against the preponderance of the evidence; but such findings will be reversed if contrary to the preponderance of the evidence or clearly wrong. *Lieberman* v. *Lieberman,* 142 W. Va. 716, pts. 5 and 6 syl., 98 S. E. 2d 275; *Cyrus* v. *Tharp,* 147 W. Va. 110, pt. 7 syl., 126 S. E. 2d 31. Similar principles have been applied to findings of fact made by the workmen's compensation appeal board. Such findings will not be reversed unless clearly or plainly wrong. *Buckalew* v. *State Compensation Director et al.,* 149 W. Va. 239, 140 S. E. 2d 453, (decided at this term of Court); *Tate* v. *State Compensation Director et al.,* 149 W. Va. 51, 138 S. E. 2d 636. Conversely, such findings of fact will be reversed if clearly or plainly wrong. *Buckalew* v. *State Compensation Director et al.,* 149 W. Va. 239, 140 S. E. 2d 453; *McGeary* v. *State Compensation Director et al.,* 148 W. Va. 436, 135 S. E. 2d 345.

Code, 1931, 23-1-15, provides that the commissioner "shall not be bound by the usual common law or statutory rules of evidence, * * *." It has been held that this statute applies also to proceedings before the appeal board. *Vento* v. *State Compensation Commissioner et al.,* 130 W. Va. 577, 583, 44 S. E. 2d 626, 630; *Morris* v. *State Compensation Commissioner,* 135 W. Va. 425, 430, 64 S. E. 2d 496, 499. On appeal, the appeal board is not bound by the findings of

the commissioner. The board considers and decides the case *de novo*. It is the action of the board which comes before this Court for review on appeal. "The finding of the commissioner wholly disappears, with all presumptions which might have attached thereto. The appeal board displaces the commissioner, and becomes the sole fact-finding body to be thereafter considered in the case. The order of the appeal board is a wholly new finding, which superseded that of the commissioner for all purposes." *Manning* v. *State Compensation Commissioner*, 124 W. Va. 620, 625, 22 S. E. 2d 299, 301. To the same effect see *Vento* v. *State Compensation Commissioner et al.*, 130 W. Va. 577, 44 S. E. 2d 626; *Dillon* v. *State Compensation Commissioner*, 129 W. Va. 223, 39 S. E. 2d 837; *Szalay* v. *State Compensation Commissioner et al.*, 127 W. Va. 449, 33 S. E. 2d 236; *Moore* v. *State Compensation Commissioner et al.*, 118 W. Va. 578, pt. 1 syl., 191 S. E. 292; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 515, pt. 1 syl., 184 S. E. 250; *Georges Creek Coal Co.* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 89, 183 S. E. 866.

While this Court approves and undertakes to adhere to the liberality rule, it has also consistently held that the liberality rule will not take the place of proof or relieve the claimant of the burden of establishing his claim. *Hoff* v. *State Compensation Commissioner et al.*, 148 W. Va. 33 pt. 1 syl., 132 S. E. 2d 772; *Eady* v. *State Compensation Commissioner et al.*, 148 W. Va. 5, 132 S. E. 2d 642, 646; *Turner* v. *State Compensation Commissioner et al.*, 147 W. Va. 145, 126 S. E. 2d 379, 382-383; *Meade* v. *State Compensation Commissioner et al.*, 147 W. Va. 72, 125 S. E. 2d 771, 776; *Williams* v. *State Compensation Commissioner et al.*, 127 W. Va. 78, 84, 31 S. E. 2d 546, 549. In the case last referred to above, the Court stated: "* * * While informality in the presentation of evidence is permitted in compensation cases, and, under many decisions of this Court, a rule of liberality in favor of the claimant will be invoked in appraising the evidence presented, still the burden of establishing a claim rests upon the one who asserts it, and no rule of liberality will take the place of required proof." To the same effect, see *Turner* v. *State Compensation Com-*

*missioner et al.,* 147 W. Va. 145, 126 S. E. 2d 379, 382-83; 54 W. Va. Law Review 72. In the light of the legal principles previously stated, we now proceed to review the evidence in an effort to determine whether the findings of the appeal board are sustained by the proof.

The claimant had worked for the employer, Mount Vernon Dairy Farm Products, Inc., at its milk distribution plant at Charleston for more than eight years prior to December 9, 1961, the date of the alleged injury. A part of his work consisted in loading and unloading delivery trucks from an outside loading platform at the plant. A conveyor carried milk and other items to and from inside the plant in order to facilitate the loading and unloading of delivery trucks parked near the loading platform. The claimant asserts that he received his injury while unloading a delivery truck. It was dark at the time, though the loading platform was properly lighted.

The claimant made several somewhat variant statements concerning the cause of and the circumstances attending his alleged injury. In his application he stated: "Slipped and fell on ice on loading dock, hit cement, hurt back." In undertaking to judge this statement charitably and with fairness to the claimant, we observe at this point that he is unable to read or write, that his wife apparently completed the application in her own handwriting and that the claimant signed the application merely by making an appropriate mark, pursuant to Code, 1931, 2-2-10 (c) which is, in part, as follows: "But when the signature of any person is required, it must be in his own proper handwriting, or his mark, attested, proved, or acknowledged;". In connection with the investigation made in behalf of the director by Charles C. Morris, the claimant made an affidavit on December 18, 1962, in which he gave an account of the alleged accident and injury as follows: "We were loading trucks on the platform at the plant * * *. I had been in the plant unloading a truck and came back out to the platform to load another truck. As I came out of the plant, my feet flew out from under me and I fell on the edge of the platform on a steel rim. I hit on the end of my spine and it

hurt so badly I couldn't stand on my feet. I went over to the garage and sat down for awhile and then went back to work."

At the hearing, the claimant made several statements as follows: "My job was to unload the truck, and the man inside was to pull them back, which he had so many this time and I went off the job and went inside to pull them back, and when I come out to get a case that was jumping up and down this case fell off and threw me between the two trucks. * * * I came out there and there was a case jumping up and down, * * * and I jumped over to get the milk and as I did that it threw me and I fell. * * * I hit the back of my neck, in between the trucks, the bumpers." The claim manager for Mutual of Omaha testified that the claimant had insurance with his company; that the claimant submitted two claims for benefits under the insurance policy; and that in a written statement made in that connection on October 29, 1962, the claimant stated: "I fell on a steel track in Mount Vernon Dairy plant at Charleston."

December 9, 1961, the date of the alleged injury, was Saturday. The claimant continued working that evening and thereafter continued to work and to perform the usual duties of his employment until his scheduled vacation which commenced March 24, 1962, and continued until April 9, 1962. Thereafter he was absent from work because of illness on one or more occasions but he worked regularly from May 7, 1962, until June 30, 1962, when his employment by Mount Vernon Dairy Products, Inc., ceased because of the state of his health.

The claimant testified that three men named Feldhaus, Fisher and Pratt were standing about fifteen or twenty feet from him when he fell. In that connection he testified at the hearing as follows: "They were standing there looking at me. If they didn't see me, I don't see why they couldn't." The claimant testified further that after the accident he went into a nearby garage where he sat and rested for fifteen or twenty minutes because of pain caused by his fall; and that later Feldhaus assisted the claimant with his

work until it was finished. Feldhaus testified at the hearing that he did not see the claimant fall and that he had no recollection of the claimant's having told him of falling or having pain in his back until May, 1962, about six months after the injury, when the claimant stated that he had hurt his back but that he did not say when or how. Fisher testified that he did not see the claimant fall; that at some time later, he heard a discussion concerning an injury to the claimant's back but he could not recall when or from whom he received the information.

The claimant testified that on the following day he told the employer's bookkeeper, Morrison, about his fall and injury. If the fall was on December 9, 1961, the following day was Sunday. Neither Morrison nor the claimant worked on that Sunday. Morrison testified: "I don't recall anything of an injury occurring to his back in the five years and a half I have known Mr. Hayes." Morrison testified that when he learns that an employee has sustained an injury, he refers the employee to the cashier in the payroll department where the typist processes the claim; that after December 9, 1961, and while claimant was still employed by Mount Vernon Dairy Products, Inc., he sustained an injury to a thumb and on another occasion an injury to a hand or foot; and that workmen's compensation claims in behalf of Hayes were processed through the office of the employer in both instances in order to receive compensation for medical bills incurred in connection with the two injuries.

The claimant testified that he told the plant manager, Lawrence Menefee, of the fall within a few days after it occurred. In testifying as a witness, Menefee stated that claimant did not report the alleged fall to him and that he received his first information about the matter when Morris was conducting the investigation for the director. At another place in his testimony he stated: "That's the first I knew that he was filing for compensation."

When the claimant was asked why he delayed filing a claim for almost a year following the date of the alleged fall, he stated that his reason was that "I didn't want any-

thing against my job." The fact remains, however, that two workmen's compensation claims were made in his behalf thereafter; and that he delayed filing the claim involved in this case for a period of about four or five months after his employment terminated.

The claimant did not consult a doctor until December 19, 1961, ten days after the alleged fall. He consulted Dr. L. B. Matthews, who testified as a witness at the hearing. The doctor testified that when the claimant consulted him on December 19, "his complaint was chiefly pain in the lower left abdomen and running into the left sacroiliac area of eight days duration; pain did not seem to awaken him at night, but he had considerable soreness in the left lumbar area and there was some limitation of straight leg raising at that time to 45 degrees." The claimant consulted the same doctor next on January 2, 1962. The doctor testified that on this occasion "he stated that his pain in his sacroiliac on the left was improved, but most of his pain then was more in the left lumbar area and in the lumbosacral area of the spine." The doctor on that occasion "gave him some tablets to take and strapped his back." The doctor testified that the claimant consulted him on three other occasions thereafter "for other illnesses * * * but for this complaint I saw him next on July 25, 1962." During that interval, the claimant was admitted to McMillan Hospital in Charleston on at least two occasions for complaints unrelated to the back pain. On one of these occasions, Dr. Matthews called Dr. Harold Kuhn, an orthopedist, for consultation "because of his previous complaint of low back pain." Dr. Matthews testified further: "Then again he was admitted on July 1, 1962, with again an upset intestinal tract with blood in his stool and bronchitis," but this hospitalization was not for "the back condition." The doctor treated the patient professionally from time to time but he testified that the last time he treated the patient "in regard to his back problem" was on July 25, 1962. Dr. Matthews last treated the patient on September 22, 1962, for "pain in the lower part of his chest and mild bronchitis."

Dr. Matthews testified that he had no independent recollection of the claimant's ever having stated that he injured

his back as a result of a fall; that his records show no history of a definite injury; that he went through all his records but failed to find therein any report of an injury; and that, if such report had been made to him by the claimant, he would have noted it in his records.

The claimant testified that after he arrived at his home in the evening of the day of his alleged injury, he was suffering from pain in his back; that he sat down "in front of the fire," apparently in an effort to have heat applied to his back; that his wife suggested that he consult a doctor but that he did not think the injury "would amount to anything;" and that his wife looked at his back and observed that it was "blue and black." The wife of the claimant testified that she looked at his back after he returned to his home from work on the night of December 9, 1961; that she observed "what you call a black-blue looking color, like a bruise is," on the lower part of his back "and up and down this backbone here * * *;" that she gave him some headache powder for pain; that he sat in front of the living-room stove in order to "get heat from the fire, on his back;" and that following that day he "would go sort of bent over-like." We believe it is pertinent to observe that Doctor Matthews did not testify that on December 19, 1961, or at any other time he observed any contusion, abrasion, discoloration or other visible indication of an injury to the claimant's back, or that he walked in a bent-over position.

In *Machala* v. *Ott, Compensation Commissioner*, 108 W. Va. 391, 396-97, 151 S. E. 313, 315, the Court stated: "While it is the purpose of the Workmen's Compensation law that it shall be liberally interpreted and benignly applied for the benefit of injured workmen and their dependents, it does not follow that awards should be made out of the fund unless there be a satisfactory and convincing showing that the injury complained of was actually received by the employee in the course of his employment."

We do not believe it has been established by credible proof that the claimant sustained personal injuries in the course of and resulting from his employment. On the contrary, we believe that the order of the workmen's compen-

sation appeal board, affirming a prior order of the workmen's compensation director, is not supported by the evidence and that for that reason it is plainly wrong; and, accordingly, it is reversed.

The decision of the Court in this case will be certified to the appeal board and to the director.

Reversed.