JESSE FORD RAMEY

*v.*

STATE COMPENSATION COMMISSIONER *et al.*

(No. 12540)

Submitted January 12, 1966.     Decided February 15, 1966.

*Herbert H. Henderson,* for appellant.

*Huddleston & Bolen, Edwin W. Conley,* for appellee.

CALHOUN, JUDGE:

This case is before the Court on an appeal by Jesse Ford Ramey, the claimant, from an order of the workmen's compensation appeal board dated October 28, 1965, which reversed an order of the workmen's compensation commissioner dated July 16, 1965, affirming his previous order of September 6, 1963, by which he held that the claim was compensable.

In its opinion filed in connection with the order of October 28, 1965, the board stated that it was "of the opinion that the Claimant has not sustained the burden of proving a compensable injury." The primary question presented for decision is whether the proof is sufficient to establish the claimant's contention that he sustained an injury on December 10, 1962, during the course of and as a result of his employment as a welder by ACF Industries, Inc., at its plant in Cabell County.

Apparently the claimant had been employed by ACF Industries, Inc., for approximately six years prior to December 10, 1962, the date of his alleged injury. He testified that on the morning of that day, in connection with his employment as a welder, he was carrying on his shoulder welding rods weighing approximately fifty pounds between two buildings belonging to his employer; that, while doing so, he stepped on something which caused him to slip, as a consequence of which his knees buckled, he fell forward and downward, and sustained "an enormous pain" in his back; that an unidentified fellow-employee caught the welding rods as the claimant fell; that, though he did not feel well because of his fall, he continued to work during the remainder of that day; that next morning he was unable to get out of bed; that, as a consequence of the injury to his back, he remained in bed until December 14, 1962, when his brother-in-law took him to see Dr. G. C. Morrison, a physician; that, prior to the date of his injury, he had experienced no difficulty whatsoever with his back and

that he had not lost any time from work because of any pain in his back; that, because of the injury, he has been unable to work since he sustained the injury; that, on the day following his injury, December 11, his daughter, at his request, called to notify the employer that the claimant would be unable to report for work; and that, on December 14, 1962, his brother-in-law took him to the employer's plant where he talked with and reported the injury to Herman L. Frazier and Harry L. Kirk.

Mary Rowe, daughter of the claimant, testified that, on December 11, the day following the alleged injury, she made a telephone call to the employer's plant by which she advised Harry L. Kirk, the employer's personnel manager, that the claimant was not able to come to work that day.

Emmett Gibson testified that he and the claimant were fellow-employees; and that "in the first part of December," though he was not certain of the date, while they were working together, the claimant "come in and said he had hurt his back." Counsel objected to testimony of this character, concerning declarations or complaints made to the witness by the claimant, on the ground that such testimony was hearsay. The examiner, before whom the hearing was being conducted, continued to sustain similar objections to similar testimony on the basis of the hearsay rule. He admonished the witness not to testify as to "what anyone told you," whereupon the witness replied: "I didn't say anyone. He told me. He said he hurt his back."

Dr. G. C. Morrison testified that the claimant came to his office on December 14, 1962, to consult him professionally concerning an injury to his back; that the claimant reported that he had suffered an injury to his back when he fell on December 10, 1962, while carrying some welding rods "at work at American Car;" that the claimant apparently was suffering from a sprained back; that his overall physical condition was good "other than his pain in his back;" that he recommended that the claimant apply heat to his back, remain off his feet and stay in bed; that the claimant returned to consult him on December 17 and

December 24, and from time to time thereafter; that he recommended that the claimant have an x-ray but that the x-ray was not made until January 10, 1963; that the claimant consulted the witness professionally on March 19 and April 2, 1963, and that the claimant then "was getting along fine" but that on April 18, the claimant came to the office of the witness and "was limping quite a little;" that the claimant stated that he, on April 15, had sprained his back again while chopping down a tree with an ax; and that the claimant apparently was totally disabled from working from December 14, 1962, the date of the first visit to the doctor's office, until April, 1963. He testified that the claimant "reinjured" his back while swinging an ax on April 15. The witness gave the following additional answer: "Yes, I couldn't say whether his first injury was well before he had the second injury, or whether the second injury was responsible for his disability. I don't think anybody can tell you that." The witness testified that on April 2, 1963, the last time the claimant saw him before the back injury was aggravated by use of an ax on April 15, the claimant still "limped a little bit." Apparently it was on the occasion of the visit of April 18, 1963, when the patient reported he had hurt his back again or anew while using an ax on April 15, that Dr. Morrison referred the claimant to an orthopedist. The doctor testified further that he had not released the claimant to return to work prior to the time of the ax episode.

Dr. J. Marshall Carter, an orthopedic surgeon, a witness for the claimant, testified that he first saw the claimant on June 17, 1963; that the claimant was then using a cane and that the claimant reported that he was using the cane because of an injury he sustained during the course of his employment on December 10, 1962, and in the manner previously stated in this opinion; that the claimant stated that the pain was not so severe at the outset; that he continued to work during the day on which the injury was sustained; that next morning his pain was more severe and he reported the injury that day to the employer; that the claimant stated he had been unable to work since the day he sustained the injury; that his chief complaints were of low back pain and

pain in the left lower extremity; that there was very little motion in claimant's back; that "On attempting to have him bend forward or laterally there was only a few degrees of motion and he complained of pain in his back;" that, in connection with physical therapy administered to the claimant, it was noted that he had "pain and muscle spasm and with muscle stimulation over the left sciatic notch region and over the left lower lumbar area and over the left hamstring region the patient complained severely of pain." Dr. Carter recommended that the claimant be admitted to a hospital because of the doctor's opinion that claimant had "a herniated or bulging disk." Accordingly the claimant was admitted to a hospital on July 26, 1963, where "a laminectomy was done" on July 29, 1963. Dr. Carter testified further that the hospital experience was satisfactory and that the patient was discharged in about eight days, a normal length of time. He testified that he last saw the claimant on November 11, 1963, "at which time he was still complaining of some back pain and left leg pain;" and "I accepted the history as given me and the description of his injury of 12/10/62, which certainly could be the type of injury that could cause his complaints and physical findings."

Herman L. Frazier, a witness for the employer, testified that he was employed by ACF Industries, Inc., to administer group insurance. It appears from the testimony that the employer was covered by workmen's compensation and that, in addition, it carried one type of insurance for injuries sustained by employees apart from their employment and another type of insurance which supplemented workmen's compensation in respect to injuries related to the employment. Frazier identified an application for insurance benefits made by the claimant and dated February 12, 1963. The application contained two squares, one designated "yes" and the other designted "no," which were designed to indicate whether the injury arose from the employment. On this application for insurance benefits, a check mark appears in the square which would indicate that the injury did not arise from the employment. The employer urges that this discloses an inconsistency of positions on the part of the

claimant. In relation to this contention, the claimant testified that the form was filled in by Dr. Morrison; that though he, the claimant, signed the application, he did not read its contents before it was signed. He testified further that consistently from the outset he reported to the doctor that the injury was sustained during his employment, as detailed previously in this opinion. His testimony in this respect is fully corroborated by the testimony of Dr. Morrison, who testified that the negative answer in the application form resulted from an error on his part. Counsel for the claimant endeavored to introduce two insurance application forms previously submitted to the employer by the claimant, both indicating that the injury resulted from the employment, but the trial examiner refused to permit them to be made a part of the proof at the hearing. In the circumstances, this obvious error in the application form cannot be regarded as a matter of consequence.

Harry L. Kirk, personnel manager for the employer, testified that the claimant worked on Monday, December 10, 1962, the date of the alleged injury, and that he had not worked since that day; that the employer's record indicates that, by a telephone call made on the morning of December 11, 1962, the employer was advised that the claimant would be unable to report to work on that day because of snow; that Mrs. Ramey (apparently the claimant's wife) came to the plant on December 21, 1962, to get insurance blanks and that this was the first information the employer had of the alleged injury; that he did not know whether the claimant was injured while at work or not; and that if an employee is injured on the job and does not report it for fifteen days, "we can't handle" it because "he could have hurt himself anywhere." Kirk testified that he cannot process a workmen's compensation claim unless the claimant produces an eyewitness to the event which resulted in the injury. The trial examiner reminded the witness that it "is against the law" for an employer to refuse to process a workmen's compensation claim merely because the claimant does not produce an eyewitness. Thereupon the witness qualified his previous testimony in relation to the subject of processing such claims.

After the ruling of compensability was made by the commissioner on September 6, 1963, the employer appealed to the appeal board, asserting three bases of error as follows: (1) The claimant had filed a claim under an insurance policy; (2) the claimant had no corroborating evidence of the accident and nobody saw the claimant fall; and (3) there was a second accident, not related to the claimant's employment. On March 10, 1965, the appeal board remanded the case to the commissioner because the record indicated that the employer had refused to permit the claimant to enter its plant to search for the workman who was alleged by the claimant to have witnessed the fall. The appeal board, in connection with the remand, directed that the claimant be permitted to enter the plant to search for the witness. Subsequently the claimant, accompanied by a union representative, was permitted to enter the plant, approximately two and one-half years after the date the injury is alleged to have been sustained, to search for the witness, but the search was in vain. The record indicates that there were approximately 1200 employees at the plant.

Thereafter the matter was again submitted to the commissioner for decision upon the same record and proof. On July 16, 1965, the commissioner entered an order affirming his previous order of September 6, 1963, and the employer thereafter prosecuted the appeal to the appeal board. The former order of the commissioner, affirmed by his subsequent order, contained the following language: "It is further ordered and directed that the claimant be paid compensation on a total temporary disability basis for lost time due to his injury of December 10, 1962, until he has attained certified as able to return to work, or has attained his maximum degree of improvement; * * *."

On appeal to this Court, counsel for the claimant asserts (1) that the appeal board, in effect, ruled that an eyewitness, in addition to the claimant, is required to establish a workmen's compensation claim; and (2) that the appeal board erred in holding that the claimant had not sustained the burden of proving a compensable injury.

Counsel for the claimant contends that the appeal board's decision was erroneously based on the proposition that the claimant was unable to produce an eyewitness to the occurrence which is alleged to have caused an injury during the course of and as a result of the employment. In support of this contention, counsel points to the fact that one of the three bases of error asserted in behalf of the employer in connection with its initial appeal from the ruling of the commissioner was that nobody witnessed the alleged fall which furnished the basis of the claim. In further support of his contention, counsel for the claimant points to the fact that, upon the first appeal, the appeal board remanded the case to the commissioner in order that the claimant might be permitted to enter the employer's plant to search for the alleged eyewitness. We are unable to discern from the appeal board's opinion and order that it held that an eyewitness to the event which caused the alleged injury is an indispensable prerequisite to an award of workmen's compensation benefits, or that an award was denied for that reason. In oral argument before this Court, counsel for the employer concedes that the law makes no such requirement. In order that there can be no misunderstanding in relation to the question, we deem it advisable to state, though it may be superfluous to do so, that the law does not require an eyewitness to the event which is alleged to have caused an injury as a prerequisite to an award of workmen's compensation benefits. See *Gulf Oil Corporation* v. *McManigal*, 49 F. Supp. 75.

It is fundamental that an award of benefits cannot be made in a workmen's compensation case unless the claim is supported by satisfactory proof that the claimant sustained an injury during the course of and resulting from his employment. *Emmel* v. *State Compensation Director et al.*, 150 W. Va. 277, pt. 1 syl., 145 S. E. 2d 29; *Deverick* v. *State Compensation Director et al.*, 150 W. Va. 145, pt. 2 syl., 144 S. E. 2d 498; *Hayes* v. *State Compensation Director*, 149 W. Va. 220, pt. 3 syl., 140 S. E. 2d 443, "Whether an injury occurs in the course of and resulting from the em-

ployment so as to be compensable under the workmen's compensation act depends upon the particular facts in each case." *Emmel* v. *State Compensation Director et al.,* 150 W. Va. 277, pt. 2 syl., 145 S. E. 2d 29.

Although an award of workmen's compensation benefits cannot be based wholly on hearsay testimony, it is proper to consider testimony of that character in connection with other competent evidence. *Evans* v. *State Compensation Director et al.,* 150 W. Va. 161, pt. 2 syl., 144 S. E. 2d 663; *Machala* v. *State Compensation Commissioner,* 109 W. Va. 413, 155 S. E. 169. While this Court is required to give weight to findings of fact made by the workmen's compensation appeal board, such findings will be reversed if not supported by the evidence and if they are, for that reason, clearly wrong. *Deverick* v. *State Compensation Director et al.,* 150 W. Va. 145, pt. 4 syl., 144 S. E. 2d 498; *Kennedy* v. *State Compensation Director et al.,* syl., 150 W. Va. 132, 144 S. E. 2d 509; *Hayes* v. *State Compensation Director et al.,* 149 W. Va. 220, pt. 4 syl., 140 S. E. 2d 443; *Buckalew* v. *State Compensation Director,* 149 W. Va. 239, pt. 1 syl., 140 S. E. 2d 453.

Concerning the degree of proof required to establish a workmen's compensation claim the Court, in *Machala* v. *State Compensation Commissioner,* 109 W. Va. 413, 416, 155 S. E. 169, 170, stated: "The applicant, in this sort of proceeding, as in others, has the burden of proving his claim. But evidence sufficient to make a reasonable person conclude that the decedent was injured while performing his duties in the course of his employment is sufficient. 2 Schneider on Comp. section 537. So the burden of proof rests upon the applicant to furnish evidence from which it can be logically drawn that the injury arose out of and in due course of the employment, but that such proof may be hearsay as well as direct. No rule may be laid down as to the degree of proof which is sufficient to justify such recovery. If the evidence, though slight, is sufficient to make a reasonable person conclude that decedent was injured while performing his duties in the course of his employment or duties

incidental to that employment, then that feature of the case is proved." To the same effect see *Eady* v. *State Compensation Commissioner et al.*, 148 W. Va. 5, 10, 132 S. E. 2d 642, 646.

Tested by the applicable legal principles previously stated herein, we are of the opinion that the workmen's compensation appeal board erred in reversing the order of the commissioner and in holding that the claimant failed to sustain the burden of proving a compensable injury. The claimant testified in adequate detail that he sustained an injury during the course of and as a direct result of his employment. His testimony of that character is not in any sense incredible. It is not contradicted by the testimony of any other witness. He reported the injury to a fellow-employee, apparently on the morning of the same day the injury is alleged to have been sustained. The testimony indicates that, prior to December 10, 1962, he was physically able to work regularly and that he has not been able to perform the same type of work since that date. His daughter testified that on the morning of the following day, she notified the employer that her father was unable to report for work. About four days after the date of the alleged injury, the claimant consulted Dr. G. C. Morrison, a physician, in reference to pain in his back. In that connection, according to the testimony of the physician, the claimant reported that he had injured his back while at work and stated the details concerning the occurrence of the injury just as the claimant subsequently stated the details while testifying as a witness. The doctor testified further that the claimant was totally unable to work from December 14 until the date in April when claimant is alleged to have "reinjured" his back while using an ax. Dr. J. Marshall Carter, the orthopedist, testified that when the claimant first consulted him on June 17, 1963, he reported in detail the manner in which he injured his back while at work on December 10, 1962. As has been stated earlier in this opinion, Dr. Carter testified: "I accepted the history as given me and the description of his injury of 12/10/62,

which certainly could be the type of injury that could cause his complaints and physical findings."

For reason stated in this opinion, the order of the workmen's compensation appeal board dated October 28, 1965, is reversed and the case is remanded to the workmen's compensation commissioner for such further proceedings as may be proper.

*Reversed and remanded.*