163 S.E.2d 605 (1968)
Junie P. DUNLAP
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER, and Humphreys' Dairy Bar.
No. 12750.
Supreme Court of Appeals of West Virginia.
Submitted September 10, 1968.
Decided October 8, 1968.
Jeter, Jeter & Jeter, Charleston, for appellants.
Stone, Bowles, Kauffelt & McDavid, Charleston, for appellee.
CALHOUN, Judge:
This workmen's compensation case is before the Court on appeal by the employer, Humphreys' Dairy Bar, for review of an order entered by the Workmen's Compensation Appeal Board on May 7, 1968, which affirmed an order of the West Virginia Workmen's Compensation Commissioner entered January 9, 1968, by which, in reversing his prior order of July 11, 1967, he held that the claim was compensable. The principal question presented for decision on this appeal is whether the record sustains *606 the finding of the appeal board that the claimant sustained an injury during the course of and as a result of her employment and that therefore her claim is compensable.
Humphreys' Dairy Bar, a corporation owned by H. P. Humphreys, his wife and their daughter, Mrs. Zoe H. Sarrett, operates a restaurant in Charleston, West Virginia. The claimant, Junie P. Dunlap, age 51, worked for about two weeks as a cook in the kitchen of the restaurant until May 18, 1967, when she claims to have sustained an injury to the lower area of her back. Her claim for compensation benefits states that the injury resulted from "carrying a tray of chicken." At the hearing, however, she stated that she was injured while getting a "big pan out from under the shelves". In her testimony, she stated that she bent over to pick up an empty "pan", the chickens then not having been placed on it; and that "when I raised up it hit me". The undisputed testimony discloses that the "pan" was an aluminum tray similar to trays used in cafeterias and that it weighed from one to two pounds.
On the day of the alleged injury, the claimant and Alma Hunt worked as cooks in the restaurant kitchen on the afternoon and evening shift from two o'clock until ten-thirty p.m. According to the claimant's testimony, she continued performing her work until quitting time despite the fact that she suffered pain in her back from the time of the alleged injury until she quit work. She walked home that night after work, but she testified that she went to bed as soon as she got home and that on the next day she called one of the girls employed at the restaurant to report that "something was wrong" with her back and that she would be unable to report for work. May 18, 1967, was Thursday. The claimant testified that on the "next Friday" she was taken in an ambulance to Staats Hospital in Charleston, where she remained four weeks and one day. While in the hospital she was attended by Dr. Dwight Staats and Dr. Charles Staats, who subsequently referred her to Dr. E. H. Heilman, an orthopedist. On October 21, 1967, the claimant commenced working as a cook at Staats Hospital. She was continuing in that employment when she testified on November 9, 1967, but in her testimony she stated that at that time she was "still going to see" Dr. Heilman. She testified further that she had never had back trouble, never had "serious back trouble," and had never "been treated for back trouble" prior to May 18, 1967.
Mrs. Janet Blanset, daughter of the claimant, testified that she lives in Memphis, Tennessee, and that she was visiting in the home of her mother on May 18, 1967; that she walked with her mother to the restaurant in the afternoon of that day; that at and before that time her mother did not complain of and apparently did not have any "pain or back trouble"; that she ate the evening meal with her mother in a booth at the restaurant about six-thirty that evening; that she and her brother had to help their mother out of the booth after she finished eating the evening meal; that she and her brother assisted their mother in walking home after she quit work at ten-thirty p.m.; and that next morning the claimant "couldn't sit down and she couldn't walk and she was in miserable pain." The claimant and her daughter were the only witnesses who testified in support of the claim.
The record does not contain testimony of any medical doctor. However, the record contains a claim for medical bills incurred by Dr. E. D. Staats in the treatment of the claimant which was signed by him and stamped as received by the commissioner on June 15, 1967; and a similar claim for medical services rendered by Dr. Elwood H. Heilman, signed by him and stamped as received by the commissioner on July 17, 1967. In a blank space on the printed forms following the words "Diagnosis of injury", Dr. Staats' statement contains the words "Lower back strain" and Dr. Heilman's statement contains the words "Lower Back Sprain". The file contains a letter dated June 7, 1967, from Dr. E. D. Staats to the commissioner requesting permission to *607 transfer the claimant as a patient to Dr. E. H. Heilman, an orthopedist. That letter also states that the patient was injured when she suffered a "back strain" while carrying a heavy tray. The commissioner referred the claimant to Dr. Heilman with a request that he submit a report of his findings and recommendations. The file also contains a letter dated July 11, 1967, directed to the medical division of the workmen's compensation "department" by Dr. E. H. Heilman, in which he stated that the claimant had suffered a "great flare-up of her symptoms from her lumbosacral sprain." In the letter the doctor further stated that "Her symptoms were those of lumboscral sprain and her recovery was quite slow. * * * I prescribed a lumboscral corset * * *." On August 11, 1967, Dr. Heilman wrote a similar letter in which he reported, among other facts and findings, that the claimant was advised to continue wearing her corset, to rest at home as much as possible, to use the board under her mattress, to use heat on her back and to return to the doctor in two weeks.
Mrs. H. P. Humphreys testified that when the claimant applied for employment at Humphreys' Dairy Bar she stated that she occasionally had backache. Mrs. Humphreys was unable to recall whether she was at the restaurant at the time the claimant is alleged to have sustained an injury to her back, but she testified that several days thereafter the claimant called the witness by telephone and reported that she was "ill". H. P. Humphreys testified that he is at the restaurant every day, seven days each week, and that the claimant did not report to him that she had sustained an injury to her back. Alma Hunt testified that she was employed as an evening cook for Humphreys' Dairy Bar and in that capacity she worked with the claimant in the kitchen; that she did not recall the claimant's having complained of pain in her back at any time; and that she "didn't know she had hurt her back in there, if she had." Alma Hunt further testified that while she and the claimant were working as cooks in the kitchen, the salad girl and waitresses came to the kitchen from time to time and that the dishwasher worked there after seven-thirty in the evening. There is no evidence that the claimant reported her alleged injury or complained of any pain in her back to any of the restaurant employees on May 18, 1967.
Alma Hunt testified further that Mrs. Sarrett, daughter of Mr. and Mrs. H. P. Humphreys, told the claimant she was smoking too much; that after Mrs. Sarrett left the kitchen, the claimant "said if she couldn't smoke she wouldn't work"; and that the claimant continued her work in a normal manner on the evening and night in question. The file contains a statement made and signed by Mrs. Sarrett to the effect that she told the claimant she would not be permitted to smoke while cooking and that it was against "the health laws" for one to smoke while cooking.
Adelle Lord testified that previously she had been employed as a housekeeper at the Heart O'Town Motor Inn in Charleston; that the claimant applied to her for employment and that when asked about her health, the claimant replied: "My back hurts me. I have arthritis in my back." Adelle Lord testified further that when she told the claimant she could not be accepted for employment if she had arthritis, the claimant replied that "It doesn't bother me." The claimant was then employed by Heart O'Town Motor Inn to make beds and clean eighteen rooms on one floor. The witness testified further that the claimant's services were satisfactory; that she did not complain of any pain or inability to work because of the condition of her back; and that the claimant "said she was feeling fine."
Janet Morris testified that she was employed as a dishwasher at Humphreys' Dairy Bar while the claimant was employed there as a cook; that on the second day of the claimant's employment, the witness asked the claimant to help lift a tray of dishes and that the claimant replied: "I cannot help you lift anything because I have back trouble. *608 I cannot lift anything heavy." This witness testified further that the claimant stated that she had "back trouble for a long time"; that the claimant performed her work in a normal, routine manner; and that she did not appear to be suffering from pain at any time.
In rebuttal of the testimony in behalf of the employer, Junie P. Dunlap, the claimant, testified that she worked two weeks at Heart O'Town Motor Inn and that her duties there consisted of "maid work," including making beds, dusting and cleaning the floors and bathrooms. She denied having told Mrs. Lord that she had arthritis in her back. The claimant also denied that she declined to help Mrs. Morris lift some dishes in the kitchen and denied that she told Mrs. Morris she had back trouble.
The record in this case includes a report made May 26, 1967, by Dr. W. Paul Elkin, a radiologist, of his findings relative to an X-ray of the claimant's back. The report is as follows: "LUMBAR SPINE: X-rays of the lumbar spine revealed very small hypertrophic spurs on the anterior margins. The appearance was essentially normal otherwise with a very minimal scoliosis noted. Hypertrophic spurs were more prominent in the lower thoracic area." This report is relied upon by the employer as tending to prove that the claimant had a physical impairment in her back prior to May 18, 1967.
This case calls for the application of legal principles which have become settled by prior decisions of this Court. When a case is before the appeal board, it considers the case de novo; it becomes the sole fact-finding body; its findings supersede those of the commissioner; and it is the action of the appeal board which comes before this Court for review on appeal. Hayes v. State Compensation Director, 149 W.Va. 220, pt. 1 syl., 140 S.E.2d 443; Taylor v. Workmen's Compensation Comm'r., 151 W.Va. 409, 412, 151 S.E.2d 283, 285. While informality is permitted in workmen's compensation cases and a rule of liberality in favor of the claimant will be observed in appraising the evidence presented, still the burden of establishing a workmen's compensation claim rests upon the one who asserts it and the well-established rule of liberality cannot be considered to take the place of proper proof. Deverick v. State Compensation Director, 150 W.Va. 145, pt. 1 syl., 144 S.E.2d 498. Code, 1931, 23-5-4a, as amended, provides that upon a judicial review of a decision of the appeal board "the findings of fact of the board shall have like weight to that accorded to the findings of facts of a trial chancellor or judge in equity procedure." In the light of that statute, this Court will not reverse a finding of fact made by the appeal board unless it appears from the proof upon which the appeal board acted that its finding is clearly wrong. Hosey v. Workmen's Compensation Comm'r., 151 W.Va. 172, 151 S.E.2d 729. On the other hand, a finding of fact made by the appeal board which is not supported by the evidence and which, for that reason, is clearly wrong, will be reversed by this Court on appeal. Ramey v. State Compensation Comm'r., 150 W.Va. 402, pt. 2 syl., 146 S.E.2d 579; Deverick v. State Compensation Director, 150 W.Va. 145, pt. 4 syl., 144 S.E.2d 498. We cannot say that the factual finding of compensability made by the appeal board is clearly wrong.
The claimant's testimony is, in a considerable measure, supported by the testimony of her daughter. They testified that the claimant had never suffered from pain in her back prior to May 18, 1967. This testimony is corroborated in part by the undisputed fact that the claimant worked regularly for Heart O'Town Motor Inn and for Humphreys' Dairy Bar, performing her work in a normal, satisfactory manner for an aggregate period of about four weeks preceding the time of her alleged injury. It was stipulated that the claimant worked at Heart O'Town Motor Inn until she commenced working for Humphreys' Dairy Bar. The record fails to disclose that she complained of pain in her back or that she was unable to perform her duties as a maid or as a cook in a normal satisfactory manner.
*609 It is true that Adele Lord, housekeeper at the Heart O'Town Motor Inn, testified that the claimant stated that she had arthritis in her back and Janet Morris, dishwasher at Humphreys' Dairy Bar, testified that the claimant declined to help the witness lift a tray of dishes and that on that occasion the claimant stated that she "had back trouble for a long time." The claimant in her subsequent testimony denied having made those statements. The testimony of the claimant and her daughter that the claimant's pain and disability commenced on May 18, 1967, is corroborated by the undisputed testimony that the claimant was thereafter confined to her home until she was taken to a hospital in an ambulance where she remained as a patient for weeks and that thereafter she continued under the care of Dr. E. H. Heilman, at least until the date of her testimony. The testimony of the claimant and her daughter is corroborated by the statements of Dr. E. D. Staats and Dr. E. H. Heilman that the claimant's disability was diagnosed by them as a strain or sprain in the lower area of her back. It does not appear from the record that the X-ray report disclosed any condition of the claimant's back which was at variance with the diagnoses of Dr. Staats and Dr. Heilman. In other words, it does not appear from the record that the diagnoses of low back strain or sprain could have been confused with the preexisting condition disclosed by the X-ray report.
For reasons stated in this opinion, the order of the Workmen's Compensation Appeal Board dated May 7, 1968, is affirmed.
Affirmed.