JOHN MCGEARY

*v.*

STATE COMPENSATION DIRECTOR, AND
ELKAY MINING COMPANY

(No. 12293)

Submitted January 14, 1964.    Decided March 31, 1964.

*Patrick J. Flanagan,* for appellant.

*Valentine & Beddow, John C. Valentine,* for appellees

BROWNING, JUDGE:

Claimant, John McGeary, sustained a severe back injury on March 1, 1960, as a result of a slate fall in the mine of his employer, Elkay Mining Company. He was hospitalized at Man, West Virginia, until March 18, 1960, when he was transferred to The Miners Memorial Hospital at Williamson, West Virginia, and placed in the care of Dr. A. A. Grebe. On November 14, 1960, Dr. Grebe notified the State Compensation Commissioner that claimant should be evaluated as to the advisability of a spinal fusion or, in lieu thereof, for a determination of his permanent disability. The commissioner referred claimant to Dr. H. A. Swart, who examined him on December 21, 1960, and reported claimant's complaint of back pain on bending, lifting, riding in cars, walking, standing, weather changes, coughing and sneezing, and, after noting his

clinical and X-ray findings, stated: "By X-ray this man was shown to have a severe compression fracture of the 12th dorsal vertebra. The degree of compression is extreme, and there is some backward tilting of the vertebra. It is possible that a spine fusion might strengthen this man's back and reduce his pain. I do not think he will ever be able to work in the mine again, no matter what is done. If the spine fusion is not performed, I would recommend an award of 50% permanent partial disability." The claimant was again referred to Dr. Grebe, to perform the spinal fusion if he believed it to be indicated, and on March 6, 1961, Dr. Grebe reported to the commissioner that the claimant did not desire a spinal fusion and therefore, he agreed with Dr. Swart that the permanent disability was 50%.

The commissioner, on March 27, 1961, entered an order granting to claimant a 50% permanent partial disability which order was protested by the claimant. At the hearings pursuant to the protest, the reports of four physicians were introduced. Dr. Kuhn, in his report, stated: "It is the impression of this examiner that this man is unable to do any work in a coal mine. I would recommend a 65% partial permanent disability. If the award is made on the basis of whether he can return to his former employment, I do not believe he could do so. I believe he could do only light work." When cross-examined on his report, Dr. Kuhn testified that claimant: cannot do heavy manual labor; cannot do work requiring lifting, stooping or bending; cannot do work requiring standing or walking for prolonged periods; and, can only do work of a sedentary nature. Dr. Swart, upon cross-examination of his original report to the commissioner, testified that claimant cannot do manual labor of the type required in the mines but could do "some very light work, preferably where he could sit down." Dr. Anderson, in a report of an examination made of claimant on August 31, 1961, concluded: "This man has a very severe fracture of the 1st lumbar vertebra. He has rather marked limitation of motion of the spine. This man is close to being totally and permanently disabled. Partial permanent dis-

ability of 60% is recommended in this case." In testifying, Dr. Anderson stated that: it is very doubtful if claimant could return to employment in the mines; it is questionable "whether he could do anything that he was able to do before"; he cannot do heavy lifting or heavy manual labor; and, he might be able to work as a janitor or filling station attendant, if no heavy lifting was required.

Dr. Hechman, who examined claimant on May 22, 1962, reported: "I believe that there is no doubt that this man has definite weakness of his spine. I suspect he must have a great deal of pain if he attempts to do any bending or lifting. The possibility of a fusion in this area would give some strength to the area, however, I doubt that even a fusion would allow this man to return to a gainful occupation where he would have to do bending or heavy lifting. It is my feeling that this man is entitled to a 40 per cent permanent partial disability as a result of this injury." Dr. Carter examined claimant on April 27, 1962, and stated: "It is my opinion that this patient should have a fusion of this area and then evaluation following fusion; however, this would not necessarily allow this patient to return to work in the coal mines. It should stop his pain and maybe he could be rehabilitated to a lighter type of work. Pending any follow through on this recommended treatment by all parties concerned, at the present time it is my opinion that this patient has a permanent total disability." The clinical findings of all five physicians are substantially the same, their reports only varying in the percentage of permanent disability recommended for such findings, and, the three who testified all agreed that the impairment is functional, without regard to any type of employment.

Claimant also testified, stating that: he is forty-eight years of age and has a third grade education; he cannot write and can read only a little; his only employment has been as a miner, farmer and sawmill worker; and, he has not worked since his injury.

On April 1, 1963, the commissioner set aside his previous order and granted claimant a 60% permanent partial dis-

ability, which order, on appeal by the claimant, was affirmed by the Workmen's Compensation Appeal Board on September 6, 1963, and to which action of the board this Court granted an appeal to claimant on November 22, 1963.

The Legislature of this state recently, by Chapter 195, Acts of the Legislature, Regular Session, 1963, changed the title of the State Compensation Commissioner to Director of Workmen's Compensation, and in this opinion that official will be referred to by the new designation. All of the powers, duties and responsibilities of the Director, Workmen's Compensation Appeal Board and other boards or officials which administer the Workman's Compensation Fund are statutory and derived from Chapter 23 of the official code of 1931, as amended.

This Court held in the early case of *Higgins* v. *Williams Pocahontas Coal Co.,* 103 W. Va. 504, 138 S. E. 112, that in the investigation and decision of contested claims before him the director acts in a quasi-judicial capacity. After the creation by the Legislature of a Workmen's Compensation Appeal Board in 1935, hereinafter referred to as the appeal board, to hear appeals on behalf of the employer or a claimant, this Court held that an order of the appeal board affirming the finding of the director will not as a general rule be set aside if there is substantial evidence and circumstances to support it. *Walk* v. *State Comp. Com'r.,* 134 W. Va. 223, 58 S. E. 2d 791; *Burgess* v. *State Comp. Com'r.,* 121 W. Va. 571, 5 S. E. 2d 804; *Moore* v. *Workmen's Comp. App. Bd.,* 118 W. Va. 578, 191 S. E. 292. However this Court has also held that where the finding of the director is contrary to undisputed evidence, or at variance with a clear preponderance of the whole evidence, his finding will be reversed by this Court. *Flynn* v. *State Comp. Com'r.,* 141 W. Va. 445, 91 S. E. 2d 156; *Miller* v. *State Comp. Com'r.,* 130 W. Va. 771, 45 S. E. 2d 249. This Court has likewise held in many of its decisions, apparently for the first time in *Caldwell* v. *State Comp. Com'r.,* 106 W. Va. 14, 144 S. E. 568, that it is the duty of the director to liberally construe evidence in favor

of a claimant for workmen's compensation. *Turner* v. *State Comp. Com'r.*, 147 W. Va. 145, 126 S. E. 2d 379; *Williams* v. *State Comp. Com'r.*, 127 W. Va. 78, 31 S. E. 2d 546.

The Legislature has seen fit by the provisions of Code, 23-4-6 (d), as amended, to fix the percentage of disability attributable to certain definitely ascertainable physical impairments. For example, it is provided therein that the loss of a leg below the knee shall constitute 45% disability and that the loss of both feet or the use thereof shall entitle the injured workman to an award of total permanent disability. The same section, subsection (c), empowers the director to fix the degree of permanent partial disability to which the injured person is entitled as the result of a compensable injury between one and eighty-four percent disability, it being presumed that a permanent disability of eighty-five percent and over is total. After the director has fixed the degree of permanent partial disability of a claimant at a percentage less than eighty-five percent, for example in this case, at sixty percent, and the claimant accepts such award, he is paid thereunder for the period provided by statute and his claim closed, subject to further adjustment within a prescribed statutory period.

Code, 23-4-16, as amended, giving the director continuing jurisdiction over a case within the statutory period, has been construed many times by this Court. In the early case of *Watkins* v. *Comp. Com'r.*, 111 W. Va. 126, 161 S. E. 20, this Court in construing that section held that the director did not have authority after a final decision, granting a permanent disability award, to reopen a case upon application of the claimant and grant an additional award of compensation if the facts before him were the same or substantially the same as the facts upon which he had based the former award. This Court, in the more recent case of *Igo* v. *State Comp. Com'r.*, 128 W. Va. 402, 36 S. E. 2d 690, held that where a claimant had been granted a permanent partial disability award and upon the expiration of payments thereunder made application for further benefits this Court would not disturb a de-

cision by the board affirming a final order of the director denying a reopening of the claim where such application did not show an aggravation, progression or some other fact or facts not theretofore before the director and which would entitle the claimant to additional benefits.

It must be noted that the case before this Court is not one in which a claimant has filed a petition for reopening of his claim after the expiration of a permanent partial disability award. By his final order the director granted to the claimant a sixty percent permanent partial disability award. It was from that order that the claimant appealed to the appeal board and the director's order was affirmed. Therefore, upon the facts of this case, this Court is not confronted with the usual problem of determining whether or not the appeal board erred in affirming the action of the director in finding that the claimant had not made a proper showing for reopening of his claim. The applicable statutory provisions relating to the reopening of a claim and what is necessary to be shown for such reopening may be found in Code, 23-5-1a-1d, as amended, the first two relating to such application by a claimant and the latter two to an application by a subscribing employer. In the past, applications for appeals by claimants from final orders of the appeal board, affirming the director in denying reopening, have been refused by this Court even though its members have been of the opinion, from the record, that the claimants had permanent partial disabilities greater than that awarded them by the director and appeal board in the first instance. The test by which such appeals must be treated in this Court is not whether the award in the first instance was correct but whether or not the applicant has made the showing provided therein of a progression or aggravation of his physical condition resulting from the injury or asserts some new fact or facts not theretofore considered by the director. The instant case, as heretofore stated, does not fall within the purview of the reopening provisions, but involves the question of the propriety of the initial award, the decision of which will foreclose the

claimant from hereafter reopening his claim unless he is able to meet the requirements for reopening.

Counsel for the employer in their very able brief emphasized the diversity of recommendations as to the claimant's disability and it is true that there is a diversity of recommendations as to disability ranging from forty percent to total. There were four recommendations intermediate to those—two of fifty percent disability, one of sixty percent and the other of sixty-five percent. There is no provision in the workmen's compensation law giving a physician or surgeon, even if he be an official examiner for the director, the power or the authority to fix the degree of disability in any case. That is the responsibility and duty of the director alone. Therefore, in evaluating the disability of a claimant it is his duty to examine the physical findings of the examining physicians and determine from that and all of the other evidence in the case what award, if any, claimant should be granted. *Kamensky* v. *State Comp. Com'r.*, 148 W. Va. 258, 134 S. E. 2d 582. Although there is a wide variance in the recommendations of the award of permanent disability of the examining physicians, a careful perusal of the physical findings upon which such percentages were recommended shows them to be very similar as will be observed from the quotations from such reports and the doctors' testimony heretofore related in this opinion. This Court has held in several decisions that if the order of the appeal board "appears clearly to have been wrong", "is clearly wrong", "is plainly wrong" or "where the facts are undisputed, and the record will admit of reasonable inferences favorable to the claimant", such ruling will be set aside by this Court. *Morris* v. *State Comp. Com'r.*, 135 W. Va. 425, 64 S. E. 2d 496; *Walk* v. *State Comp. Com'r.*, 134 W. Va. 223, 58 S. E. 2d 791; *Rasmus* v. *Workmen's Comp. App. Bd.*, 117 W. Va. 55, 184 S. E. 250.

This Court, upon review of the evidence contained in this record and especially of the medical reports and evidence, finds little, if any, conflict therein. It is the view of the Court that upon the evidence before the appeal

board it had no alternative other than to reverse the order of the director and direct him to enter an order granting an award of permanent total disability to the claimant. Therefore, the order of the appeal board of September 6, 1963, is reversed and this case will be remanded to the appeal board and to the director for the entry of an award of total permanent disability to this claimant.

*Reversed and remanded.*