383 S.E.2d 780

**Betty HARRISON**

v.

**WORKERS' COMPENSATION COMMISSIONER and Elco Plumbing & Heating Company.**

**No. 18790.**

Supreme Court of Appeals of West Virginia.

July 7, 1989.

———

Michael R. Crane, Forman, Kanner & Crane, Charleston, for Betty Harrison.

Jackson & Kelly, Charleston, for Workers' Compensation Commissioner et al.

Per Curiam:

This case is before the Court upon the appeal of Betty Harrison, widow of William

A. Harrison, from the July 29, 1988 Workers' Compensation Appeal Board's affirmance of the Commissioner's July 21, 1987 Commissioner's order which denied the claimant dependent's benefits because the claimant had failed to establish that the decedent was exposed to asbestos for the requisite periods. Since the Commissioner had previously ruled on three separate occasions that the claimant had established the exposure requirements for eligibility under *W.Va.Code*, 23–4–1 [1976] and the exposure requirements for the medical presumption under *W.Va.Code*, 23–4–8c(b) [1988], and without specific findings to the contrary, arbitrarily reversed himself, the Appeal Board's affirmance of the decision is reversed.

This claim deals with the interplay of *Code*, 23–4–1 [1976] and *Code*, 23–4–15b [1988],[1] regarding the proceedings before the Commissioner in occupational pneumoconiosis (OP) claims.

The procedure for obtaining OP benefits begins with *Code*, 23–4–15 [1986], the filing of the application for benefits. If a timely application for benefits has been filed pursuant to *Code*, 23–4–15, the Commissioner must make three additional non-medical determinations prior to sending the claim for a medical evaluation by the OP Board.[2] Two of these determinations concern the claimant. One of these determinations concerns the employer.

The first finding regards the claimant's eligibility to file the claim. *W.Va.Code*, 23–4–1 [1976] contains the eligibility requirement for OP:

[C]ompensation shall not be payable ... unless the employee has been exposed to the hazards of occupational pneumoconiosis in the State of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards, or for any five of the fifteen years immediately preceding the date of such last exposure.

*See* syl. pt. 1, *Buchanan v. SWCC*, 173 W.Va. 516, 318 S.E.2d 460 (1984).

If a claimant is initially eligible to file for benefits the Commissioner must then make a second finding concerning the claimant: whether the claimant is entitled to a rebuttable medical presumption that OP substantially contributed to the disability or death of the covered employee.

*W.Va.Code*, 23–4–8c(b) [1988] reads:

(b) If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his employment for a period of ten years during the fifteen years immediately preceding the date of his last exposure to such hazard and that such claimant or deceased employee has sustained a chronic respiratory disability, then it shall be presumed that such claimant is

---

1. This claim was initially filed by the decedent in 1976, then subsequently refiled by his widow in 1982. Certain amendments have been enacted. However, the appropriate statute for our consideration are the current statutes. Syl. pt. 2, *Cole v. SWCC*, 166 W.Va. 294, 273 S.E.2d 586 (1980). *See Buchanan v. Workers' Compensation Commissioner*, 173 W.Va. 516, 519, 318 S.E.2d 460, 463 (1984) regarding the liberalizing amendments to *Code*, 23–4–1. Mr. Harrison apparently continued to work until early 1977.

As noted in syllabus point 2 of *Buchanan v. Workers' Compensation Commissioner*, 173 W.Va. 516, 318 S.E.2d 460 (1984), *Code*, 23–4–15b [1988] requires the Commissioner to make numerous nonmedical findings, prior to sending an OP claimant for a medical evaluation before the OP Board. *Code*, 23–4–15b requires the Commissioner to make four findings, whether the claim was timely filed under *Code*, 23–4–15 [1986]; whether the employee has been ade-

quately exposed to the hazards of OP so as to entitle him to benefits under *Code*, 23–4–1 [1976]; whether the employee has been adequately exposed to the hazard of OP so as to entitle him to a medical presumption contained in *Code*, 23–4–8c(b) [1988] that the employee's disability or death resulted from OP; and the chargeability of the claim under *Code*, 23–4–1 [1976]. Each of these findings is discussed separately in the text.

2. The claim was initially filed by Mr. Harrison on September 22, 1976, and supported by his treating physician, Dr. Dominic Gaziano's diagnosis of asbestosis dated March 15, 1976. Therefore, the timeliness requirement for filing a claim under *Code*, 23–4–15 was never an issue in this case.

The claim was subsequently ordered by the Appeal Board to be treated as a widow's benefits claim upon Mr. Harrison's death in 1981.

suffering or such deceased employee was suffering at the time of his death from occupational pneumoconiosis which arose out of and in the course of his employment. This presumption shall not be conclusive.

The third finding concerns the employer. *W.Va.Code*, 23–4–1 limits the liability of employers who may be charged for such awards:

An application for benefits on account of occupational pneumoconiosis shall set forth the name of the employer or employers and the time worked for each, and the commissioner may allocate to and divide any charges resulting from such claim among the employers by whom the claimant was employed for as much as sixty days during the period of three years immediately preceding the date of last exposure to the hazards of occupational pneumoconiosis. The allocation shall be based upon the time and degree of exposure with each employer.

*See* syl. pt. 2, *Richardson v. SWCC*, 137 W.Va. 819, 74 S.E.2d 258 (1953), reading *Code*, 23–4–1 and *Code*, 23–4–15b in *pari materia* and requiring that the exposure be continuous during the 60–day period.

As noted in syllabus point 2 of *Buchanan, supra*, *W.Va.Code*, 23–4–15b encapsulates these required findings by the Commissioner prior to sending a claim to the OP Board for their medical opinion.

This claim was initially filed by a plumber, William Harrison (deceased), in 1976 while he was still working for his last employer, Elco Plumbing & Heating Company (Elco), a West Virginia firm.

Based upon employment information contained on the application, the Commissioner entered an order on August 16, 1977, finding Mr. Harrison timely filed his application for benefits under *Code*, 23–4–15 and was adequately exposed to asbestos so as to render him eligible for benefits pursuant to *Code*, 23–4–1 and entitle him to the medical presumption of 23–4–8c(b). The Commissioner further found Mr. Harrison's last two West Virginia employers, Elco Plumbing & Heating Company (Elco) and Cimco, the chargeable employers.[3] From 1977 until 1980 four hearings were conducted on the nonmedical rulings, during which time the employers and the Harrisons produced evidence of Mr. Harrison's employment history and employment environments.

Mr. Harrison was born in 1920. From 1937 until 1977 he worked as a plumber for 40 different firms in ten different states. Although the claim was initially filed in 1976, Mr. Harrison continued to work at Elco until some unspecified date in early 1977. Therefore, the parties treat 1977 as his date of last exposure. For purposes of determining eligibility to file a claim under *Code*, 23–4–1, and entitlement to the medical presumption under 23–4–8c(b), we also will assume that 1977 is the accurate date and only review his work history from 1962.

The following chart summarizes Mr. Harrison's employment history for his last fifteen years of employment as a plumber.[4]

---

3. Elco and Cimco were represented by the same counsel.

4. The chart is based upon a certified extract of Mr. Harrison's itemized statement of earnings from the 1930's until the 1970's, provided by the social security administration. Mr. Harrison submitted the chart at a 1977 hearing. Since he testified without any precision as to periods of employment, we must rely on the extract.

Since the earnings are reported by quarters, these periods of employment are only estimations. The employer raises for the first time on appeal that the earnings report reveals that Mr. Harrison worked in the shipyards. Therefore, the employer concludes that the claimant actually contracted asbestosis from his work in the shipyards. The extract reveals that he clearly worked for a shipyard one-half year in 1942. However, Mr. Harrison was never asked about these matters when he was cross-examined in 1977 and 1980. Therefore, we have no evidence of the nature or extent of Mr. Harrison's employment in shipyards.

This is not to suggest that an employer can defend an asbestosis claim by alleging that the claimant *actually* contracted the disease at another workplace. Like most state workers compensation statutes regarding latent diseases, the legislature does not require that a claimant establish actual liability. Instead, employers who are among the risk group (i.e., have asbestos at the workplace) for whom the claimant was employed for 60 days during the three years prior to the date of last exposure to the risk, or death,

| | |
|---|---|
| 1962 | 1¼ year—W.Va. Heating & Plumbing |
| | ¼ year—California plumbing firm |
| 1963 | ¼ year—Ohio plumbing firm |
| | ½ year—between two additional West Virginia firms |
| 1964 | entire year—three additional West Virginia plumbing firms |
| 1965 | ½ year—additional West Virginia plumbing firms |
| 1966 | ¾ year  W.Va. Heating & Plumbing |
| | ¼ year—additional West Virginia plumbing firm |
| 1967–70 | 3¼ years—W.Va. Heating & Plumbing |
| | ¾ years—additional West Virginia plumbing firms |
| 1970–72 | several plumbing firms in several other states |
| 1972–74 | ½ year—W.Va. Heating & Plumbing |
| | 1½ years—Cimco |
| 1974–77 | 3 years—Elco |

Based on this employment history, Mr. Harrison worked roughly 12.25 years for West Virginia firms from the 15 years of his *assumed* date of last exposure in 1977, with Elco. Mr. Harrison testified that when he worked for West Virginia Heating & Plumbing (roughly 4.75 years) and when he worked for Elco (roughly 3 years), he would be sent on repair jobs of old plumbing. For instance, at Elco, he worked on eight to ten different repair jobs a day. While he could not remember every site that required him to work around asbestos, he testified that he was required to saw off old insulation, crawl underneath building structures, or within the eves of buildings, and work with or near insulated boilers. He testified that he knew the appearance of asbestos, which was easily identified

share the risk. *Code,* 23–4–1 and 23–4–15. *See* Larson 4 *Workers' Compensation* § 95 "Rights Between Insurers" (1988).

once struck with a hammer and he worked around asbestos or asbestos dust.

However, the claimant testified that his work at Cimco, from 1972 through 1974, involved new construction.

In defense of the claim, Cimco confirmed that the insulation used on the new construction projects was made of fiberglass. Therefore, since the claimant was not exposed to asbestos while working for Cimco, it was not a chargeable employer under *Code,* 23–4–1.

Elco also attempted to refute chargeability. Mr. Harrison testified that his work at Elco consisted solely of repair work of old plumbing. The president of Elco testified that in 1980 he went to four locations that Mr. Harrison had previously testified required him, in 1974, to work around or remove asbestos insulation. At one location, the employer still found asbestos insulation in 1980. At the other locations the employer did not "feel" the insulation contained asbestos.

Although Mr. Harrison testified that his work at West Virginia Heating & Plumbing, where he was employed for roughly four years throughout the 1960's, consisted of both repair work and new construction work and that he was also exposed to asbestos during these periods. Counsel for the employers, Cimco and Elco, did not cross-examine the claimant on these matters.[5]

The Commissioner entered the second non-medical order dated October 8, 1980. Again, consistent with the August 16, 1977 order, the Commissioner found that Mr. Harrison met the eligibility exposure requirements of *Code,* 23–4–1 and the medical presumption exposure requirements of *Code,* 23–4–8c(b). However, in regard to the employer, the Commissioner found that West Virginia Heating & Plumbing (rather than Elco or Cimco) was the chargeable employer under *Code,* 23–4–1.

5. When West Virginia Heating and Plumbing was subsequently named as a chargeable employer, that firm was also represented by counsel for Elco and Cimco.

Both parties appealed and Mr. Harrison died, at age 61, on February 1, 1981, while the claim was pending before the Appeal Board. The Appeal Board subsequently concluded that the record was insufficiently developed "on the questions of exposure and chargeability." Therefore, it remanded the claim and ordered it refiled as a dependent's benefits claim.

Without any additional evidence whatsoever concerning exposure or chargeability by either party, the Commissioner issued the second nonmedical order, now in the form of a dependent's claim, dated April 6, 1982.

For the third time, the Commissioner found that the claimant had met the initial exposure requirements for eligibility under *Code,* 23–4–1 and had met the requirements for the medical presumption contained in *Code,* 23–4–8c(b). However, as among West Virginia Heating & Plumbing, Cimco, and Elco, the Commissioner found Elco, the last employer, as the only chargeable employer under *Code,* 23–4–1.[6]

Elco protested and additional evidence was taken. Claimant submitted the autopsy report and February 27, 1984 commentary of Dr. Dominic Gaziano, Mr. Harrison's former treating physician. Dr. Gaziano wrote:

> [H]e had rather extensive pulmonary asbestosis. Very interestingly he presented with a very rare presentation for colon cancer in that it originated at two separate sites in the colon. This is extremely rare and probably should be re-

ported in the medical literatureas [sic] an unusual presentation for colon cancer in a subject known to have had asbestos exposure and asbestosis. This association of colon cancer with asbestosis has been suggested and many studies report an increased instance from one and a half to two and a half times the expected rate of colon cancer in asbestos workers. The subject developed acute renal failure and dialysis was begun. Because of the clinical impression of advanced malignancy with ascites and advanced lung disease, dialysis was discontinued and the patient died on February 15, 1981.

> It is my impression that asbestos disease was a major and causative factor in Mr. Harrison's death.

Claimant also attempted to refute the employer's previous contention that Mr. Harrison was not exposed to asbestos while working for Elco. With Mr. Harrison dead, the claimant submitted the testimony of her son (Mr. Harrison's stepson) who worked at Elco for two months. He testified that while he worked for Elco alongside his stepfather he had worked around asbestos insulation and described the manner in which he identified it. He specifically named two job sites where he and his stepfather, in 1976, removed the asbestos insulation from old pipes and replaced them with new pipes.

The employer submitted 1985 laboratory test results from the pipes of the two job sites previously mentioned by claimant's son. The tests revealed 0% asbestos insu-

---

**6.** Acting on behalf of Cimco (*see* note 5, *supra* ), counsel successfully moved to have Cimco removed from the claim, based upon the previously introduced evidence that Mr. Harrison was not exposed to asbestos insulation at the new construction projects.

Acting on behalf of West Virginia Heating and Plumbing, counsel successfully moved to have West Virginia Heating & Plumbing removed from the claim as a chargeable employer. Counsel argued that under *Code,* 23–4–1, West Virginia Heating and Plumbing could not be a chargeable employer because Mr. Harrison last worked for West Virginia Heating and Plumbing in 1972. Therefore, his employment at West Virginia Heating and Plumbing was beyond "three years immediately preceding the date of last exposure." *Code,* 23–4–1. This is true only

if one assumes that Mr. Harrison's last chargeable employer, the employer with whom Mr. Harrison was last continuously exposed to the hazard for sixty days, is Elco, where he worked until 1977. *Code,* 23–4–15.

If, however, as counsel, subsequently acting on behalf of Elco, successfully argued before the Commissioner and the Appeal Board, Mr. Harrison was not continuously exposed to the hazard for sixty days at Elco, then 1977 is not the date of last exposure under *Code,* 23–4–15, in which case the Commissioner could feasibly determine that another date, prior to 1974 (the beginning of Mr. Harrison's employment with Elco) is the date of last exposure, from which, the Commissioner could redetermine the chargeable employer under *Code,* 23–4–1.

lation around the pipes as they existed in 1985.

The claim was submitted. On July 21, 1987, contrary to the three previous rulings, and with the only additional evidence offered by the employer being the above laboratory results on two job sites, the Commissioner denied the claim because:

> [T]he employee has not been exposed to the hazards of occupational pneumoconiosis for a continuous period of not less than two years in the State of West Virginia during the ten years immediately preceding the date of last exposure, *nor been exposed for any five years during the fifteen years immediately preceding the date of last exposure*, it is ordered this claim be rejected; all of which is accordingly so ordered.

(emphasis added).

By order dated July 29, 1988, the Appeal Board affirmed, finding that:

> The decedent had a varied employment history and was apparently exposed to asbestos at various times during his employment history. However, it is abundantly clear from a review of the record evidence that the decedent had not been exposed to the hazards of occupational pneumoconiosis with reasonable continuity as contemplated by West Virginia Code § 23–4–15(b) [sic]. *See also Richardson v. Commissioner*, [137 W.Va. 819] 74 S.E.2d 258 (W.Va.1953).

■ "An order of the Workmen's [now Workers'] Compensation Appeal Board, affirming an order of the Director of Workmen's Compensation, which is clearly wrong, will be reversed by this Court with directions to enter a proper order consistent with the evidence." Syllabus, *McGeary v. State Compensation Director*, 148 W.Va. 436, 135 S.E.2d 345 (1964).

■ Prior to death, Mr. Harrison testified that while working for West Virginia Heating & Plumbing and Elco, his job required the removal of asbestos insulation in order to repair damaged pipes. Given the nature of his employment, he did not contend that every single repair job (over 50 per week) would require him to remove asbestos. However, he regularly encountered it in the course of his employment.

The Commissioner concluded on three previous occasions, August 16, 1977, October 8, 1980 and April 6, 1982 that Mr. Harrison timely filed the claim and was adequately exposed to asbestos while working in West Virginia to render him eligible for benefits and entitle him to the medical presumption.

Besides the medical report of Dr. Gaziano which states that Mr. Harrison died of "rather severe pulmonary asbestosis," the only additional evidence offered was Elco's laboratory study performed on only two jobs almost ten years after Mr. Harrison performed his duties of replacing the fixtures.

The Commissioner's reliance on the laboratory studies, the only additional evidence offered by the employer, in determining that the claimant was not adequately exposed to asbestos so as to entitle him to the exposure and medical presumption rulings was arbitrary as it is not supported by the evidence and contrary to three previous orders of the Commissioner and is therefore reversed. *McGeary v. State Compensation Director*, 148 W.Va. 436, 135 S.E.2d 345 (1964).

■ The Appeal Board affirmed and also found that the claimant was not "continuously exposed" to asbestos while working for Elco.

In this case, the Commissioner had previously found on three prior occasions that the claim was timely filed, and that the claimant was adequately exposed to asbestos to render him eligible to file a claim and to entitle him to the medical presumption concerning causation. Therefore, a determination of whether the claimant was continuously exposed to asbestos for sixty days at Elco is relevant solely for determining whether the Commissioner may properly allocate all or part of the charges associated with paying the claim to Elco. *Richardson, supra; Code*, 23–4–1 and 23–4–15.

We therefore remand the twelve-year-old-claim to the Commissioner and direct that the Commissioner enter an order find-

ing the claimant eligible for benefits under *W. Va. Code*, 23–4–1 and entitled to the medical presumption of *W. Va. Code*, 23–4–8c(b), and to send the claim to the OP Board for a medical evaluation. *See* 23–4–15b [1988]. The determination as to the allocation of charges for the claim is remanded to the Commissioner. At this point, the Commissioner may consider Elco's evidence that on two job sites, the claimant was not exposed to asbestos. This evidence may be considered to determine whether the claimant was continuously exposed to asbestos for sixty days at Elco, during his three years of employment with the firm, so as to allocate some or all of the charges to Elco. *Richardson, supra, Code*, 23–4–1 and 23–4–15. Should the Commissioner find that Elco is not a chargeable employer (that Mr. Harrison was not continuously exposed to asbestos for sixty days), this would not only affect the chargeability of Elco, under *Code*, 23–4–1, but would require the Commissioner to redetermine the date of last exposure under *Code*, 23–4–15, then the claimant's date of last exposure would be different than the currently presumed date of 1977, and the Commissioner would then be required to redetermine the proper chargeable employers under *Code*, 23–4–1. *See* note 6, *supra*. In either event the issue before the Commissioner on remand solely concerns chargeability of the claim.

Reversed and remanded with directions.